## AARON BESHIRS v. STATE.

No. A-2717.   Opinion Filed September 7, 1918.

1. **EVIDENCE—Testimony of Witness Not Found—Indorsement of Names on Information.** In a prosecution for murder, where the testimony of a witness was given at the preliminary examination and his testimony was taken by the reporter, in the presence of the defendant and his counsel, who cross-examined him, and such testimony is transcribed and filed with the court clerk, **held,** that if the witness is not present at the final trial, and the state shows that such witness cannot with due diligence be found within the jurisdiction of the court, the testimony of the witness may be read to the jury; and **held,** further, that it is immaterial that the names of the witnesses used by the state to prove that defendant had been confronted by the witness, and that the witness was then beyond the jurisdiction of the court, were not indorsed upon the information.

2. **HOMICIDE—Degrees—Intent—Evidence of Intoxication.** In a prosecution for murder, evidence of intoxication is admissible to show an absence of the premeditated design to kill, for the purpose of determining whether the offense was murder or manslaughter, and a state of intoxication which will reduce the degree of homicide from murder to manslaughter in the first degree must be of such character and extent as to render the defendant incapable of entertaining or forming a design to effect death, and the question is for the jury to determine.

3. **SAME—Murder—Manslaughter in First Degree.** A person who commits a homicide while so drunk as to be incapable of forming a premeditated design to kill, if he had formed no purpose to commit the crime prior to the time he became so intoxicated, is not guilty of murder, but is guilty of manslaughter in the first degree.

4.   **SAME—Instructions—Evidence.**   In a homicide case it is not error to refuse the defendant's request for instructions submitting the issue of manslaughter in the second degree, where there is no evidence tending to establish that degree of homicide.

*Appeal from District Court, Bryan County;*
*Jesse M. Hatchett, Judge.*

Aaron Beshirs was convicted of manslaughter, and he appeals.   Affirmed.

*McPherren & Cochran,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   This appeal is from a conviction had in the district court of Bryan county, in which plaintiff in error was found guilty of manslaughter in the first degree and his punishment assessed at imprisonment in the penitentiary for the term of 17 years.   The information charged the defendant, Aaron Beshirs, with the murder of one Walter Smith, alleged to have been committed in Bryan county on or about the 5th day of September, 1915.

The evidence was substantially as follows:

Lucy Purvis testified that she was staying at the home of her sister, Mrs. Joe Beshirs, and on Sunday afternoon, September 5, 1915, Ada Beshirs was there, and Walter Smith, the deceased, called there about three o'clock; that the defendant called there about four o'clock, and left shortly afterwards; that she and Ada Beshirs, with Walter Smith, started that evening in a buggy to go to singing at Yuba, and after going some distance they met the defendant. who asked, "Is that you, Walter?" and Mr. Smith said, "Yes," and he then asked, "Where are you going and who have you with you?" and Mr. Smith replied, "To the singing, with Lucy and Ada"; that the defendant then

began cursing Mr. Smith, and they drove off and left him; that they met Wayne Creager, and the defendant overtook them and again began cursing Mr. Smith and calling him vile names, and Mr. Smith asked Mr. Creager to take the defendant back, as he did not want the girls to hear him cursing; that they had not gone far when the defendant overtook them again and rode up alongside of the buggy with a bottle in his hand, and he hit at Mr. Smith with the bottle and said he was going to throw the bottle at him, and Ada, his sister, said, "He should have more respect for her than that," and the defendant answered, "That he did not care if he was dead and went to hell in fifteen minutes," and he rode alongside the buggy cursing Smith and hit at him with the bottle, and then struck Mr. Smith on the temple, and Mr. Smith fell over in the buggy and somebody caught the team.

W. A. Creager testified that he met the defendant that evening, and he whooped and hallooed and said he was a fighting son-of-a-bitch; that the defendant had a bottle in his hand; that witness rode off and left him, and soon the defendant overtook him and they overtook Walter Smith, with the defendant's sister, Miss Ada Beshirs, and Miss Lucy Purvis, in the buggy; that the defendant began cursing Smith, and Smith asked witness to take him away, and they stopped and the defendant got off of his horse; that in a few minutes the defendant got on his horse and said, "Creag, let's go catch up with them," and he started on pretty fast; that he heard the girls screaming, and when he reached the buggy, in front of Mr. Stowers' house, the defendant was in the buggy with Smith; that Mr. Stowers took the bottle away from him and pulled him out of the buggy, and told him to go on home or he would

hurt him; that the defendant asked witness to catch his horse for him; that he caught his horse and led it to him, and he got on and said he would go home and get his gun and come back and "kill the damn son-of-a-bitch," and rode off.

Fred Stowers testified that he lived near Yuba; that after dark on Sunday, September 5th, he heard women screaming a few hundred yards from his house, and a few minutes later he heard screaming in front of his house, and somebody was calling for help; that he went to the road and met the girls near the roadside, and Walter Smith was in a buggy, and the defendant climbed into the buggy and grabbed Smith around the neck; that he took the bottle away from the defendant and pulled him out of the buggy and told him to go home quick or he would hurt him; that the bottle was a quart bottle, and in his judgment would weigh a pound or a pound and a half; that the next day Walter Smith was taken home, and from there they started with him to Dallas, and he died on the way; that the deceased had a cut on his temple about an inch long, and about two hours after he was taken into the house he became unconscious, and remained unconscious until he died.

Dr. Hagood testified that he examined the body shortly after death, and found a wound on the temple about an inch long, and found a depressed fracture of that part of the skull.

As a witness in his own behalf, the defendant testified that he was 18 years of age; that he had known Walter Smith about 12 years, and they were good friends; that he met and talked with him that Sunday afternoon at his brother Joe's house; that he then went to the Carter

farm and got a quart of whisky and drank it all, except two drinks that he gave to John Malone; that they then went to Will Gennon's and had supper there, and the last thing that he remembered was that he started home; that the next thing he remembered he was at his brother Joe's place, when the officers woke him up that night; that he knew nothing about Walter Smith being hit with a bottle that night, except what they told him, and he did not at any time knowingly strike Walter Smith with a bottle.

Of the various errors assigned, only two are urged in the brief for a reversal of the judgment.

The first is that the court erred in permitting, over the objection of the defendant, a transcript of the testimony of Vesta Swindell to be read to the jury.

It appears from the record that as a predicate for the introduction of the transcript Ed Swindell was called as a witness and testified that he was a brother of Vesta Swindell; that he last saw him at Ravenna, Texas, where he bought a ticket and took the train for Smithfield, Texas, and at the time of trial he was at Smithfield, Texas. It was then agreed by counsel for the state and the defendant "that the transcript of the testimony taken at the examining trial and filed as a part of the record in this case contains a true and correct copy of the testimony of one Vesta Swindell, who appeared as a witness on behalf of the state in the examining trial of the case." The state then offered the transcript, and the defendant objected to the introduction of this testimony "for the reason that the same is incompetent, irrelevant and immaterial, and it is not shown that witness is without the jurisdiction of this state."

J. T. Hightower, a deputy sheriff, was called, and he testified that he knew Vesta Swindell; that he served the subpoenas in this case and made inquiry as to the whereabouts of Vesta Swindell, and several persons told him that Vesta Swindell was at Smithfield, Texas, and he was not in the state when the subpoenas were served. It further appears that the name, "Vesta Swindell, Post Office, Yuba," appears on the list of witnesses duly served on the defendant.

The court overruled the objections, and the testimony of said witness as taken upon the preliminary examination was read to the jury.

This court has repeatedly held that the testimony of a witness given on a preliminary examination by one who is absent from the state is admissible on the trial on the information when it is satisfactorily proven that said witness is absent from the state.

In the case of *Fitzsimmons v. State,* 14 Okla. Cr. 80, 166 Pac. 453, it is held:

"In a prosecution for murder, where the testimony of a witness was given at the preliminary examination, and his testimony was taken by the reporter, in the presence of the defendant and his counsel, who cross-examined him, and such testimony is transcribed and filed with the court clerk, *held,* that if the witness is not present at the final trial, and the state shows that such witness cannot with due diligence be found within the jurisdiction of the court, the testimony of the witness may be read to the jury; and *held,* further, that it is immaterial that the names of the witnesses used by the state to prove that defendant had been confronted by the witness, and that the witness was then beyond the jurisdiction of the court, were not indorsed upon the information."

In our opinion the proof of absence from the state was sufficient. It follows that the objections interposed were properly overruled.

Second: "That the court erred in refusing to instruct the jury as to the law of manslaughter in the second degree."

It appears from the record that the defendant requested several instructions submitting the issue of manslaughter in the second degree, which were refused and exceptions allowed. The instructions given by the court properly submitted the issues of murder and of manslaughter in the first degree. The only defense made was that the defendant was so intoxicated as to be incapable of forming a premeditated design to kill.

Under our Penal Code:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition." (Section 2095, Rev. Laws 1910.)

In a prosecution for murder, evidence of intoxication is admissible to show an absence of the premeditated design to kill, for the purpose of determining whether the offense was murder or manslaughter, and a state of intoxication which will reduce the degree of homicide from murder to manslaughter in the first degree must be of such character and extent as to render the defendant incapable of entertaining or forming a design to effect death, and the question is for the jury to determine. A person who commits a homicide while so drunk as to be incapable of forming a premeditated design to kill, if he formed no purpose to commit the crime prior to the time he became so intoxicated, is not guilty of murder, but is

guilty of manslaughter in the first degree. *Cheadle v. State,* 11 Okla. Cr. 566, 149 Pac. 919.

On the undisputed facts of this case, the instructions requested were properly refused, because there is nothing in the evidence tending to show facts entering into the statutory definition of manslaughter in the second degree.

After a very careful examination of the record, we find that the other assignments of error are without merit.

Finding no prejudicial error, the judgment of the district court of Bryan county is affirmed.

ARMSTRONG and MATSON, JJ., concur.