Eddie OXENDINE (Alias Don Locklear), and
James Spence, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant
in Error.

No. A–12632.

Criminal Court of Appeals of Oklahoma.

Nov. 12, 1958.

John W. Tyree, Lewis F. Oerke, Lawton, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

PER CURIAM.

The plaintiffs in error, Eddie Oxendine (alias Don Locklear) and James Spence, hereinafter referred to as defendants, were charged by information in the District Court of Comanche County with the crime of Murder. They were tried before a jury who found them guilty and assessed their punishment at death by electrocution.

The record reveals that Reggie N. Zimmerman and Ruth Zimmerman, his wife, were living in an apartment above a war surplus store near Lawton where Mr. Zimmerman worked in the capacity of assistant manager. That about 9 p. m. on the night of the alleged murder, Mr. Zimmerman, after closing the store, climbed the outside stairs of the building which led to his apartment where his wife and 4 month old baby were waiting. The defendants, who were armed with pistols, were passing by and witnessed Mr. Zimmerman going up the stairs with a sack in his hand. They anticipated he was carrying money and decided to rob him. The defendant Oxendine, after climbing the stairs, tricked Zimmerman into opening the door of his apartment by telling him that he had a flat tire and wanted to borrow a jack. The door was slightly opened by the occupant and Oxendine, at pistol point, forced his way in. He was then joined by his companion Spence who forced Zimmerman to go downstairs with him and open the safe. After the money was taken from the safe, they returned to the apartment where the defendants bound and gagged the Zimmermans, put them in a closet and closed the door. Spence then requested Oxendine to open the door of the closet which he did. Spence then proceeded to empty his pistol into the bodies of Mr. and Mrs. Zimmerman. The husband was shot three times and was seriously injured. The two shots fired into the body of Mrs. Zimmerman produced her death. The defendants were later apprehended in New

Mexico. They both made full and complete written confessions which were introduced in evidence and never repudiated. Upon the trial of the case, both defendants testified under oath and admitted all the details of the murder as was established by the state witnesses.

Defendants' appeal to this court is predicated chiefly upon the showing, upon a screen erected in the court room and to the jury five colored pictures of the nude body of the deceased. The pictures were taken the day following the death of the deceased and after an autopsy had been performed. The photo slides were in color and showed the incision of the autopsy. One incision started at the top of the left shoulder, came down the left side of the chest, under both breasts, up the right side of the chest, ending on top of the right shoulder. This incision was intersected in the mid-chest by another incision extending downward through the abdominal region. The incisions were crudely sutured with large thread being laced about every 1½ or 2 inches. The incisions were not completely closed but appeared jagged and gapping apart in many places from ¼ inch to ½ inch as to reveal the tissues beneath the surface. The defendant objected to the showing of these pictures on the grounds that they were taken and shown only in an attempt to enrage the jury against the defendant and contends for that reason they were inadmissible.

In support of the contention, the defendant argues that the pictures were of no probative value since there was no controversy as to the cause of death. That the defendant admitted the shooting and the testimony of the defendants was not in conflict with that of the state witnesses, and that there was no issue to justify the introduction of the pictures.

■ In consideration of this assignment of error by the court, it is proper to state that this court has held that the introduction of photographs taken subsequent to a homicide is largely in the discretion of the trial court and unless this discretion is

abused it will not be cause for reversal. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166; Jackson v. State, 67 Okl.Cr. 422, 94 P.2d 851. So, we are now presented with the question of whether the trial court abused its discretion in permitting the colored photo slides to be shown to the jury over the objection of the defendant. A review of Oklahoma decisions produce no case squarely in point; however, other jurisdictions have passed upon identical cases that appear to answer the question in the case at bar. The Colorado Court in the case of St. Luke's Hospital Association v. Long, 125 Colo. 25, 240 P.2d 917, 922, 31 A.L.R.2d 1120, said:

"Error is predicated again on receipt in evidence as an exhibit of a picture of Davis's body, taken two days after the death, showing the incisions and sutures made in performing autopsies on the body. The only purpose of the exhibit, apparent or urged, was to show a mark on the lower cheek, which could have resulted from the catching of the head between the rods of the side rail. * * Here, the cause of death was so firmly established without dispute that there could be no substantial testimonial value in the picture. Had it been that of the head alone, showing merely the bruise, it might have been admissible, but the showing of the disfiguration of the body by the autopsies is pitiful and distressing and irrelevant to the issues. In case of retrial the entire photograph should not be received."

This rule was laid down in a civil case, that it was error to admit pictures which had no substantial value. This court is of the opinion that this rule of exclusiveness should be even more strictly followed in criminal cases.

■ The Colorado Court again passed upon this matter in a criminal case, Archina v. People, 135 Colo. 8, 307 P.2d 1083, 1096:

"The two pictures of the naked body of Mary Macri Archina, taken at the morgue 17 days after the shooting showing the results of extensive sur-

gery performed after the shooting, are clearly inadmissible. The pictures do not prove or tend to prove any issue in the case. It may be suggested they prove the nature and extent of her injuries—they do not, but rather prove the handiwork of surgeons who, in their efforts to save her life, had largely covered up evidence of the handiwork of the defendant."

The Court further said:

"None of these pictures is admissible, they are without probative value, they serve only to incite the jurors to passion, prejudice, vengeance, hatred, disgust, nausea, revolt and all of the human emotions that are supposed to be omitted from the jury's deliberations. Their admission was highly prejudiced and calls for a reversal."

The Supreme Court of California passed squarely upon this proposition in a recent decision July, 1957, in the case of People v. Carter, 48 Cal.2d 737, 312 P.2d 665, 673, where the defendant contended that the trial court abused its discretion in admitting into evidence certain colored slides of the deceased body at the time of the autopsy. In the Carter case, supra, there was a controversy as to what caused the wounds of the deceased and the autopsy surgeon used the slides to point out that the wounds must have been made by a certain type of instrument. The pictures showed only the head, face, and neck, and the court carefully warned the jury in its instructions against allowing the slides to prejudice them against the defendant. In that case the court said:

"If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course, be excluded. * * * On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidently arouse the passions of the jury."

Also, see People v. Cheary, 48 Cal.2d 301, 309 P.2d 431; People v. Cavanaugh, 44 Cal.2d 252, 282 P.2d 53.

It is apparent from the cases heretofore cited that if the pictures of a homicide victim made subsequent to his death are gruesome or ghastly, and carry danger of prejudice, they are inadmissible unless they are relevant to some material issue and would reasonably assist the jury in the determination of the defendant's guilt, and this relevancy must outweigh the danger that the jury would substitute emotion for reason as a basis of their verdict.

In the case at bar there was no reason for the introduction of the colored photo slides. There was no issue nor controversy as to the cause of death. The defendants admitted the crime in intricate detail. The photos could not possibly lend assistance in the determination of defendant's guilt. It was admitted. Had there been a conflict as to the shooting or cause of death or location of the wounds, or an issue to which the photos were relevant, then and in that event, they would have been admissible had they been taken prior to the performance of the autopsy. But the autopsy was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and passion of the jury. This court feels that the photos were wholly inadmissible in the form presented and their admission was an abuse of the trial court's discretion. If the photographs had been limited to the area showing the points of entrance and possible egress of the bullets without showing the gruesome incisions incident to the autopsy, the action of the court in the admission of such cumulative evidence could not be held to be reversible error, but the pictures of the nude body of this young woman showing the stated visual results of the autopsy can not help but shock the viewer. The whole procedure seems to have been so unnecessary and was highly prejudicial and forces a reversal.

The defendant contends as his next assignment of error that the court erred in

giving instruction #10 and failing to give defendants requested instruction on Manslaughter. Instruction #10 as to the part in question read:

"* * * Or should you find that the defendants or either of them were so intoxicated at the time and place of the alleged commission of said offense as to be unable to formulate a specific intent to commit the offense charged or to commit any other offense, or should you entertain a reasonable doubt thereof, then in either of said later events, you shall find the defendants or either of them, not guilty."

"Excepted to and exception allowed."

This court is of the opinion that the instruction stopped short of the law in such cases. The inference must be drawn from the instruction that if defendants were incapable of forming an intent necessary to establish murder by virtue of intoxication, they were to be acquitted. This, of course, would be contrary to our statute, Title 21 O.S.1951 § 153, which reads:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition."

The rule was established by this court in an early case, Beshirs v. State, 14 Okl.Cr. 578, 174 P. 577, 579; which stated:

"A person who commits a homicide while so drunk as to be incapable of forming a premeditated design to kill, if he had formed no purpose to commit the crime prior to the time he became so intoxicated, is not guilty of murder, but is guilty of manslaughter in the first degree."

Also, see Choate v. State, 19 Okl.Cr. 169, 197 P. 1060.

Upon retrial of the cause, if there is evidence of intoxication, an instruction approved by this court in the case of Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166, 177; would be proper:

"You are instructed that homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of voluntary intoxication at the time. However, one of the elements of the crime of murder is an intent to effect the death of the person killed and if you find that the defendant at the time of the killing was so completely drunk as to be totally unable to form an intent to kill, or if you have a reasonable doubt thereof, you should not find the defendant guilty of murder. The homicide, under such circumstances, unless otherwise excusable, would amount to manslaughter in the first degree."

This case has given this court much concern realizing full well the fiendish conception and brutal execution of the crime, the basic facts all being admitted by the defendants. However, the error causing reversal is of such flagrant nature that a precedent approving the same would be extremely detrimental to the rules of evidence by which all people charged with a crime are tried. Regardless of the seriousness of a crime, irrespective of the guilt of a defendant, our system of jurisprudence affords to her or to him a fair and impartial trial in accordance with certain fundamental rules and in conformity with the law. These rules were not adhered to in the case at bar; consequently it must be retried in compliance with the decisions recited herein.

The case is therefore reversed and remanded for a new trial.