**Alvin PICKENS, Jr., Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14287.**

Court of Criminal Appeals of Oklahoma.

Feb. 5, 1969.

Rehearing Denied March 10, 1969.

Oyler & Wise, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

The plaintiff in error, hereinafter referred to as the defendant, was charged by information with the crime of Murder. He was tried before a jury and found guilty of Manslaughter in the First Degree and sentenced to 99 years in the penitentiary. He appeals to this Court in the time prescribed by law, asserting five assignments of error.

The facts surrounding the homicide out of which this prosecution arose, as reflected by the transcript, were briefly as follows. At about 10:00 p. m. on June 23, 1966, the defendant entered the Crystal Terrace Barbecue. Seated at a table were Julius French, Dave Barker, and the deceased, James Quinn. The defendant purchased a quart of beer. After some time had expired, Quinn and the defendant became engaged in a heated argument and vile names were exchanged between them. During the argument and apparently unnoticed by Quinn, the defendant pulled a small automatic pistol from somewhere on his person, cocked it, and stuck it under his belt. Quinn left for a few minutes and apparently went next door to a shine parlor where he was a shine boy. When he returned, the defendant asked him whether he had gone for a shotgun, to which Quinn replied, in effect, "Does it look like I have a shotgun?" Shortly thereafter, the defendant left and went to the other side of the establishment, the side where food was served. When the defendant returned, Quinn was standing at the jukebox with French. Without any further argument or discussion taking place, the defendant opened fire on Quinn with the same gun he had placed under his belt. Quinn fell to the floor, and as it later developed, died immediately.

Defendant's first contention of error concerns the testimony of Dr. Violet, the pathologist, as it concerns the evidence relative to the bullets removed from the body of the deceased. Defendant contends these bullets were inadmissible and served no purpose except to influence the jury.

The only authority cited by defendant is the Oxendine case, Oxendine v. State, Okl.

Cr.App., 335 P.2d 940. This writer was the author of the Oxendine opinion, and is thoroughly familiar with the contents thereof. In that case a nude colored picture of the deceased was shown on a screen portraying deceased's body after an extensive autopsy had been performed and then sewn with large saddle stitching from the abdomen to the sternum and across the breast. We held in that case, since the picture was so gruesome and since the autopsy was no part of the work of the defendant, they could serve no purpose but to influence the jury.

In the instant case, the bullets were neither gruesome or ghastly and we call attention to Spence v. State, Okl.Cr.App., 353 P.2d 1114, a companion case to *Oxendine,* supra, where the Court said:

"Weapons, bullets, instruments, or other articles used or respecting which there is sufficient evidence to justify reasonable inference that they were or may have been used by the accused or his co-actors in the commission of crime are admissible."

It is quite evident that the rule laid down in the *Oxendine* case, supra, is not applicable herein, for there we held that where the probative value of the demonstrative evidence is not superseded by the danger of being prejudicial to defendant, it may be admitted. We cannot share defendant's claim that the spent bullets created such prejudice. Of course, if the effect of demonstrative evidence is to arouse the passion of the jury and inflame them against defendant because of the horror of the crime, they should be excluded.

We see a vast distinction between the instant case and the *Oxendine* case, supra; and defendant offers no other authority. The contention is without merit.

Defendant's second contention of error concerns the conduct of the Assistant District Attorney, Don Cunningham, in his argument to the jury. Defendant cites no authority in support of his contention. We have examined the excerpts of the argu-

ment, and as the trial judge said in overruling defendant's objection to the argument, "The court is of the opinion that this is reasonable argument of the evidence introduced in the case." This Court is not prone to substitute its opinion for that of the trial judge, unless the error complained of was flagrant and of such a nature as to be prejudicial to the defendant. The rule is well-stated in Valenti v. State, Okl.Cr. App., 392 P.2d 59, as follows:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and defendant have a right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom."

Also, see, 23A C.J.S. Criminal Law § 1093, pp. 137–143, which emphasizes the rule.

Defendant next contends the trial court erred in admitting into evidence certain statements made by defendant and introduced by the State. Defendant asserts that the statement introduced was not obtained by Constitutional process, and relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, and, Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

It appears from a close review of the record that the rule laid down in the Miranda case, supra, was closely adhered to in the instant case, and explained in the Attorney General's brief, as follows:

The record reflects that lengthy proceedings on this question were had in the trial judge's chambers, concerning the admissibility of the oral and written statements of the accused given to Officer Stanfill at the police station, the trial judge sustained the objection of defense counsel as to any testimony of the arresting officers concerning such statement and overruled the objection as to the testimony of Officer Stanfill as to the oral statement made to him and also allowed the written statement to be admitted in evidence. It is the contention of counsel that permitting such testimony and evidence

to go to the jury violated the defendant's constitutional rights, particularly the privilege against self-incrimination as enunciated by the United States Supreme Court in the case of Miranda v. Arizona, supra.

The holding of Miranda is summarized in the body of the opinion, as follows:

"  *     *     *     *     *     *

To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that any thing he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him through the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

And, see the 46th paragraph of the syllabus in Miranda, which provides:

"The American adversary system of criminal proceedings, distinguishing itself at the outset from the inquisitorial system recognized in some countries, commences when an individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any-

way; at this point the safeguards erected about the privilege against self-incrimination come into play."

Now compare the language quoted above from *Miranda* with this testimony at pages 246–247 of the casemade, in which Officer Stanfill informs the trial judge, in chambers, of just what he advised the defendant prior to hearing his oral statement:

"A. I took him into a police interrogation room on the same floor and talked to him.

Q. Before you talked to him were any statements made by you to him?

A. Yes. I told him I was a police officer and he was charged with Murder and he didn't have to talk to me and if he did it could be used as evidence against him in the event of prosecution and I advised him that he was entitled to have an attorney if he wanted to stop and have me get him an attorney or get one himself, he could, at that time.

Q. What did he say?

A. He told me that he would go ahead and talk to me."

And, this language at page 251 of the casemade, in which this same officer states what he told the defendant prior to taking his written statement:

"Q. Did you then thereafter obtain a statement from this defendant which he signed?

A. Yes.

Q. At that time did you advise him of any rights before he signed it?

A. Yes.

Q. Did you advise him—well, what did you advise him at that time?

A. Substantially the same things that I advised him before, that he was entitled to an attorney, and that if he couldn't afford an attorney we would furnish an attorney for him and that he didn't have to give a statement, that if he did that it could be used against him in a Court as evidence.

Q. Then what happened?

A. Then he gave the statement."

So then, the state takes the position first of all, that the defendant was properly advised of his constitutional rights prior to the giving of a statement. But even if the proper warnings had not been given the defendant prior to his giving of a statement, we submit that this was not that type situation that the United States Supreme Court had in mind in handing down such decisions as Miranda v. Arizona, supra; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Westover v. United States, supra; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; and Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265. Those cases all concern the taking of self-incriminating statements from an accused, which statements are later used against him at trial and which contain certain admissions on his part which run contra to his theory of defense at trial.

But that is not this case. Here we do not have a confession, as such, unless it be simply a confession by the defendant that he shot the deceased. He states, in effect, that he shot the deceased because he, the defendant, was afraid of him. The defendant took the stand after his statement was admitted in evidence, and his testimony was to this same effect. He testified that he shot the deceased because he was afraid of what said deceased might do to him.

In summary then, the state answers this contention of defendant by submitting first that the defendant was, from the testimony of Officer Stanfill, advised of the rights set out by the court's decision in *Miranda,* and further the oral and written statements he did make and which were admitted in evidence were no more incriminating than the defendant's own testimony at trial.

Defendant next contends that he was arrested at approximately 5 a. m. and was not arraigned until the following day. He contends this is in violation of the statute, and the failure to arraign defendant as prescribed by 22 O.S.1961, § 181, rendered the statement, referred to by him as a confession, inadmissible. Defendant relies upon

the rule as enunciated in McNabb v. United States, supra; also, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed. 2d 1479.

Defendant offers no evidence of ill treatment, brutality, threats, or punishment; or, that any threat, or promise of immunity that would cause the defendant to be likely to tell an untruth, or hope of profit from the promise. The only irregularity was the holding of the defendant in custody, the questioning of him by the officers, and the taking of the written statement prior to the filing of charges.

Research on the matter reveals that *McNabb,* supra, has not been adopted by this Court. This matter has been thoroughly discussed on several occasions. Two of the most informative discussions are to be found recited as Fry v. State, 78 Okl.Cr. 299, 147 P.2d 803, and, Hendrickson v. State, 93 Okl.Cr. 379, 229 P.2d 196. In these two cases, many cases are cited stating Oklahoma's position with reference to the question, which are consistently adverse to defendant's contention.

 Though this Court frowns upon delay before arraignment and more especially, where a confession is taken. Nevertheless, until it is changed, we are committed to the rule as stated in Fry v. State, supra, and Hendrickson v. State, supra.

Defendant's contentions that the trial court gave an instruction that constituted error will not herein be discussed because the record reveals that defense counsel waived his right to complain by these utterances which appear at page 320 of the casemade:

"THE COURT: Mr. Wise, I will hand you the court's instructions numbered 1 through 20 and ask you if you have any objections.

MR. WISE: No, Your Honor.

MR. OYLER: We have no objections."

It is to be observed that this Court has interpreted 22 O.S.1961, § 831 in the case of Harris v. State, Okl.Cr.App., 369 P.2d 187, as follows:

This section clearly contemplates that instructions to juries in criminal cases should be settled before they are read to the jury, and that, if counsel have any instructions which they desire to be given, or if they have any objections to any instructions proposed to be given by the court, it is the privilege and duty of counsel to point out such matters to the court before the instructions are read to the jury.

There is a good reason for the rule as stated in the *Harris* case, supra:

* * * the trial judge should be given an opportunity to correct erroneous instructions before they are submitted to the jury. It should be called to his attention before submission to the jury, therefore averting the defendant from 'laying behind a log' with a contention of error.

The judgment and sentence is accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.