Wesley FORD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14663.

Court of Criminal Appeals of Oklahoma.

Feb. 18, 1970.

Rehearing Denied June 18, 1970.

■■■■■■■■■■■■■■■■■

Clark Legate, Wallace & Bickford, Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Don Timberlake, Asst. Atty. Gen., for defendant in error.

### MEMORANDUM OPINION

NIX, Judge.

Wesley Ford, who shall be hereinafter referred to as the defendant, was charged by information with the crime of murder. He was tried before a jury, found guilty of manslaughter first degree, and sentenced to four years in the penitentiary. From said judgment and sentence the defendant appeals. He asserts numerous assignments of error. The Court has reviewed the record and find only one assigment that is worthy of discussion. That is as follows: That the rights of the defendant as guaranteed to him by Article II, Section 21, of the Oklahoma Constitution and by Article V of the United States Constitution were violated in that he was compelled to give evidence which tended to incriminate him after stating that he desired an attorney and was interrogated by officers without first being advised of his rights.

■■ This assignment of error arose chiefly out of the interrogation at the Sheriff's office by the District Attorney, and officers. A recording was made of defendant's statement. The statement begins as follows:

"MR. MORDY: Mr. Ford, my name is Burke Mordy.

MR. FORD: I know that it is. And you—.

MR. MORDY: I'm the District Attorney.

MR. FORD: Yes, sir. Yes, sir.

MR. MORDY: We are investigating the shooting that took place—

MR. FORD: Yes, sir.

MR. MORDY: Out at your house—

MR. FORD: Out at my house.

MR. MORDY: On the 5th of July, this afternoon, in which, I understand a man by the name of Hopkins was shot. Now you understand that you don't have to make any statement whatsoever. I want to ask you a few questions and any statement that you might make can be used against you in evidence. You are listening to me?

MR. FORD: Yes sir.

MR. MORDY: Any statement you make can be used against you.

MR. FORD: Give me a light, Mr. Lindsey.

MR. MORDY: You are entitled to talk to an attorney before you make any statement.

MR. FORD: I got some information for you, I'm going to talk to an attorney.

MR. MORDY: All right, that is what I want to know. Do you want to talk to an attorney before you talk to us?

MR. FORD: Yes sir, Yes sir.

MR. MORDY: Do you have anything to say to us before you make a statement?

MR. FORD: No sir. No sir.

MR. MORDY: All right. Well, let's just take Mr. Ford up and lock him up.

MR. FORD: The only thing I got to say *now*, Mr. District Attorney, is this. (emphasis ours)

MR. MORDY: All right, sir.

MR. FORD: That is my house out there, my home.

MR. MORDY: Yes, sir. That's right.

MR. FORD: That is my home.

MR. MORDY: Well, we know you shot him. Why did you shoot him. That's what we are interested in?"

From this point the defendant began to ramble and his statement was quite lengthy and he answered to all questions promptly. It was obvious that defendant was scared of being locked up, and was attempting to talk himself out of being incarcerated, and talked at great length. It was further ob-

vious that defendant was unaware that his remarks were being recorded as he spiced his remarks with almost constant spurts of profanity.

This type of interrogation exemplifies more fully the necessity of the law as announced in Escobedo v. Illinois, (1964) 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; also, Miranda v. Arizona, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, all dealing with the defendant's right to counsel; *Escobedo* announcing a new rule with reference to custodial interrogation.

The admission of the defendant's statement taken under such conditions would have been wholly inadmissible had the defense attorney refrained from requesting it be admitted:

"MR. LEGATE: Your honor, I believe that the statement would be the best evidence, and that the statement be played right here to the jury.

TRIAL JUDGE: Do I understand that the defense has no objection to that, and in fact you have already,—

MR. LEGATE: In view of the fact that the jury—to clarify the whole statement for the jury, I am not going to object."

The defendant cannot now complain that the statement on tape was inadmissible when it was played not only with the consent of defendant, but at his request.

■ Defendant's second contention of error was that the trial court erred in denying him a continuance because his wife was admitted to the hospital the day before trial. The matter of a continuance is always in the discretion of the trial court and the records reflect that she was able to leave the hospital and testify. A review of said testimony does not indicate the defendant was prejudiced thereby. Therefore, we hold there is no merit to this contention.

■ Defendant complains of photographs of the deceased's body and cites in support of his objection the case of Oxendine v. State, Okl.Cr., 335 P.2d 940. It is to be observed that the trial court refused to admit these photos into the record and they are not before us to review. We do not feel they come within the rule as adopted in the *Oxendine* case, supra, especially where they were never shown to the jury.

A thorough review of this case leads this Court to believe that defense counsel did an excellent job in getting defendant off with four years. Defendant was represented by able counsel, and from all indications, had a fair and impartial trial by a jury of his peers. There is no error reflected by the record that would justify reversal or modification.

The judgment and sentence of the trial court is therefore affirmed.

BRETT, P. J., concurs.

BUSSEY, J., concurs in result.