Clifford McKinley LAMPKIN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15250.

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1971.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

NIX, Judge:

Clifford McKinley Lampkin was charged by information in the District Court of Oklahoma County with the crime of Murder. He was tried by a jury, found guilty, and sentenced to life imprisonment. His appeal from said judgment and sentence was lodged in this Court within the time prescribed by law, asserting numerous assignments of error. The information upon which defendant was charged alleged that the defendant:

"* * * on or about December 31, 1968, in said county, did wilfully, unlawfully, wrongfully and feloniously, without authority of law, and with a premeditated design to take the life of David Lynn Reed, make an assault on David Lynn Reed by beating and stomping the said David Lynn Reed with his hands and feet, then and thereby inflicting upon the body of the said David Lynn Reed, by beating and stomping as aforesaid certain mortal wounds of which said mortal wounds so inflicted as aforesaid, he, the said David Lynn Reed, did linger and die on or about the 31st day of December, 1968, as was intended by him, the said defendant."

The pertinent witnesses in this cause testified, in substance, to the following: Patsy Louise Reed, the mother of the deceased, testified that she was 27 years old, that David Lynn Reed was her child, and that he was born in 1965. She testified that she met defendant in McAlester in 1967. She testified that at that time she was married, but that she later left her husband and went to Oklahoma City. She testified that after she came to Oklahoma City, she lived with defendant. She testified that she had seen defendant strike David Lynn Reed, the deceased. She testified that defendant said he struck David Lynn because he hated him because he was like his daddy. She testified that on December 31, 1968, she saw defendant gag and beat David Lynn. She testified that he beat David Lynn in the stomach. She testified that defendant pushed her. She testified that this had happened before, but not as bad. She testified that defendant then got mad and left. She testified that she then put David Lynn to bed. She testified that she had seen defendant strike David Lynn prior to December 31.

On cross-examination she testified that defendant came to her house about 3:30 or 8:00 p.m. on December 31, and left about 12:00. She testified that David Lynn didn't have any scars on him until she moved to Oklahoma City. She testified that once she took the child to a doctor at the Crippled Childrens Hospital, because his ears and throat were infected and that the doctor asked her to bring him back, and that the doctor asked about the blue spot on David Lynn's back. On re-direct examination, Mrs. Reed testified that defendant also beat David Lynn on an occasion two or three days before December 31. She testified that this occurred at her apartment, and that defendant beat David Lynn for no reason. She testified that the blue spot on David Lynn's back was inflicted by defendant, and that defendant inflicted all of the scars on David Lynn's scalp.

Dr. James Luke testified for the state. He testified that he was the State Medical Examiner, and that on January 1, 1969, he performed an autopsy on David Lynn Reed. He testified that David Lynn Reed was about three years old, that his abdomen was extremely distended and bloated. He testified that: (1) the entire scalp was essentially replaced by scar tissue as a result of old injuries; (2) that there was a well healed laceration of the central left lower lip; (3) that there was an old scar involving the left side of the child's nose

and running down his cheek; (4) that there were multiple recent bruises involving the forehead and scalp; (5) a scar involving the chin; (6) a recent abrasion overlying that scar; (7) a laceration on the upper portion of the left orbit, and a recent laceration involving the inside of the central upper lip, both of which were inflicted at the time of death or later; (8) that the small intestine had recently been perforated, causing peritonitis, which was the cause of death. He testified that it would take an "extremely severe blow" to cause such an injury. He testified that it was most likely caused by a fist, that it would take a great force to cause such an injury, and that the injury was inflicted two or three days before death. He identified state's exhibit 6 as a color slide showing deceased and showing some of the injuries described. He identified state's exhibit 7 as a color slide of the intestine showing the perforation.

The defendant took the stand in his own behalf and testified in substance to the following: that he met Patsy Louise Reed in McAlester. That after she moved to Oklahoma City, he stayed at her house once or twice a week. He testified that he never assaulted David Lynn Reed. That on December 31, 1968, he went to Patsy Louise Reed's house at about 5:45 p.m., that they argued, that she told him he would regret it if he left, and that he left at about 6:25 p.m., he testified that she told him that if he left she would destroy the kid and defendant would pay for it because they would believe her since she was a woman. He testified that he went back about 9:25 a.m. the next morning, and that Mrs. Reed sent him out for medicine for David Lynn. That he left at about fifteen minutes before ten, returned immediately, and left again. That he returned at about 11:00 a. m., that the firemen were there, and that he put the medicine on the fireplace, and left. He testified that he saw Mrs. Reed strike the child many times, saw her burn him with cigarettes, and saw her make the child sit in a tub of cold water. He testified that he didn't do anything about it because he loved her, and because he was afraid that the police would think that it was him that injured the child.

Defendant claims that he was convicted on the uncorroborated testimony of an accomplice, therefore, the judgment and sentence cannot stand and that the jury was not instructed as to whether Mrs. Reed was an accomplice.

In the case at bar, the prosecuting witness testified that the defendant was the sole perpetrator of the crime; while the defendant said the prosecuting witness was the sole culprit. Each emphatically denied participation in the crime. In the case of State v. Mason, 105 Ariz. 466, 466 P.2d 760 (1970), the court said:

"Here, both defendant and Sanches testified to facts from which it can be inferred that the other was the sole perpetrator of the crime. The reasonable conclusion is that after a complete investigation the prosecution concluded that Sanches was not a party to the offense and hence the prosecution proceeded against the defendant alone. It was a case of simple alternatives; either Sanchez did it or defendant did it. The court did not err in refusing to instruct the jury that an accomplice's testimony needs to be corroborated since under the evidence neither could be the accomplice of the other."

The defense contends that the mother at least remained silent and concealed the crime thereby becoming an accomplice to the crime. With this we do not agree. In Moore v. State, 4 Okl.Cr. 212, 111 P. 822:

"To constitute one a party to a crime under this statute, it is necessary that such person be concerned in the commission of the offense—that is, that he either commit it or aid or abet its commission— and it is not sufficient that he merely acquiesce therein. Consenting and acquiescing are mere mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet him in its perpetration. To be concerned in the

commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission."

 We are, therefore, of the opinion that the contention of defendant is without merit in this regard.

Defendant argues that error was committed by the trial judge admitting photographs of deceased's body laying on the bed and also the immediate area. He offers in support thereof the *Oxendine* case, Oxendine v. State, Okl.Cr., 335 P.2d 940. However, a review of the testimony leads this Court to believe the *Oxendine* case, supra, is not in point, and that the rule laid down in Koonce v. State, Okl.Cr., 456 P.2d 549, is applicable, wherein the Court said:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissable in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places. Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissable when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant."

Also see, Seals v. State, 92 Okl.Cr. 272, 222 P.2d 1037.

 We are of the opinion that the probative value of the exhibits outweighed the danger of prejudice to the defendant.

Though there is a drastic conflict in the testimony, we are bound by a verdict which is arrived at without error where there is any evidence in the record which will justify the jury's finding. See, Tilford v. State, Okl.Cr., 437 P.2d 261. The jury, in the case at bar, heard testimony from two witnesses each placing the crime at the feet of the other. The jury chose to believe the mother of deceased, which was

their prerogative. Therefore, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY, P. J., and BRETT, J., concur.