**Ulus GUY, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–722.**

Court of Criminal Appeals of Oklahoma.

July 19, 1989.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Ulus Guy, Jr., was tried by a jury in Tulsa County District Court, Case No. CRF–84–4331, and convicted of First Degree murder in violation of 21 O.S.1981, § 701.7. The jury set punishment at life imprisonment, and the judge sentenced appellant accordingly. From this judgment and sentence, appellant has perfected his appeal to this Court.

Ms. Bobbie Prince was shot by a shotgun as she exited Little Brother's Club during the late hours of November 4, 1984. She died shortly thereafter. That evening, Ms. Prince and appellant had been having drinks at the club together. They had also been arguing. Twice appellant was ejected from the club, apparently for disorderly conduct.

Norman Jones was also at Little Brother's and witnessed these incidents. He knew Ms. Prince because the two of them had once lived together. After appellant was thrown out of the club the second time, Mr. Jones approached Ms. Prince and asked if she needed a ride home. She said yes, and he agreed to meet her outside the door of the club. As she exited and began walking toward Mr. Jones's car, someone yelled at her and she looked to her left in the direction from where the voice had come. There was a gunshot. Ms. Prince screamed that she had been shot and fell to the ground. Mr. Jones heard what sounded like the footsteps of two people running across the concrete at the adjacent car wash. He ran toward the footsteps, but saw only an unidentifiable car pulling away from the area.

For his first proposition, appellant claims that he was denied a fair trial by the admission of State's Exhibit 1, a photograph of the deceased victim. Defense counsel entered a timely and specific objection to the admission of this photo and thus properly preserved this issue for review. (Tr. 9)

▮ Whether to admit or exclude photographic evidence is within the sound discretion of the trial judge. *Standridge v. State*, 701 P.2d 761, 765 (Okl.Cr.1985). Photographs are admissible if they tend to "make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See* 12 O.S.1981, § 2401. *See also Jones v. State*, 738 P.2d 525, 528 (Okl.Cr.1987). Even when relevant, however, photos may be excluded if the trial judge determines that their "probative value is substantially outweighed by the danger of unfair prejudice...." 12 O.S.1981, § 2403. *See also Jones* at 528.

Citing *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958), appellant argues that his offer to stipulate to the nature, location and cause of the victim's wounds removed the cause and manner of death as issues and thus deprived the photograph in question of its probative value. As the Court in *Oxendine* noted, there was in that case no issue or controversy regarding the cause of death, because the defendants admitted their crime in detail. Lack of probative value was not, however, the basis of the Court's decision to exclude the photo. Rather, the Court in *Oxendine* determined that the grotesque post-autopsy photograph was so prejudicial that it could in no event have possessed sufficient probative value to justify its admission:

Had there been a conflict as to the shooting or cause of death or location of the wounds, or an issue to which the photos were relevant, then and in that event, they would have been admissible *had they been taken prior to the performance of the autopsy*. But the *autopsy*

*was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and passions of the jury.* This court feels that the photos were wholly inadmissible *in the form presented ....* If the photographs had been limited to the area showing the points of entrance and possible egress of the bullets *without showing the gruesome incisions incident to the autopsy,* the action of the court in the admission of such cumulative evidence could not be held to be reversible error...."

*Id.* at 943 (emphasis supplied).

▪ Appellant also claims, however, that the photo was highly prejudicial because it depicted some of the emergency surgical procedures which the hospital had performed on the victim, and that it thus violated *Oxendine* on this basis. We disagree. Before the photo was taken, the deceased victim was turned on her side. The area on which emergency procedures were performed was therefore obscured in the photo. Both an area under the left arm where emergency procedures were performed and an instrument clamped onto the skin are detectable, but it is difficult to discern just what was done. This photograph does not depict the handiwork of the surgeon and is thus not similar to the post-autopsy photo excluded in *Oxendine.*

Whether the trial judge in the instant case properly exercised his discretion in admitting the photograph depends upon whether the photo had probative value which was not substantially outweighed by any possible prejudicial effect. *Jackson v. State,* 741 P.2d 875, 876–77 (Okl.Cr.1987). We find that the photo tended to prove that the victim's wounds were caused by a shotgun blast, and that it corroborated the medical examiner's testimony. In addition, the photo showed that the wounds were inflicted on the left side of the victim's body, corroborating Norman Jones's testimony that the shots came from the victim's left. (Tr. 83) *See, e.g., Young v. State,* 701 P.2d 415, 417 (Okl.Cr.1985). *See also Robison v. State,* 677 P.2d 1080, 1087 (Okl. Cr.1984), *cert. denied,* 467 U.S. 1246, 104

S.Ct. 3524, 82 L.Ed.2d 831 (1984). *But see Breshers v. State,* 572 P.2d 561, 567–68 (Okl.Cr.1977).

▪ We have held that "[t]he right of the state to prove its case cannot be taken away, or the force of the evidence weakened, by an admission or stipulation of the facts sought to be proven any more than the right of a defendant to present evidence tending to prove an affirmative defense can be taken away by stipulation." *Shepherd v. State,* 51 Okl.Cr. 209, 300 P. 421, 424 (1931). *See also McFay v. State,* 508 P.2d 273, 276 (Okl.Cr.1973). Thus, appellant could not have deprived the photo of its probative value by his offer to stipulate to the facts which the photo was offered to prove. Regardless of appellant's offer to stipulate to the nature, location and cause of the victim's wounds, this photo retained its probative value on these issues. Further, appellant's unilateral offer to stipulate did not even constitute a stipulation. A stipulation is a "[v]oluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate need for proof...." Black's Law Dictionary 1269 (5th ed.1979). In the instant case, there was no agreement between defense counsel and counsel for the State because the State did not agree to accept appellant's stipulation. The trial judge properly exercised his sound discretion in admitting this photograph. Appellant's first proposition is denied.

▪ Appellant claims in his second proposition that the trial court committed reversible error in failing to declare a mistrial during the testimony of State's witness, Ms. Sharon Moore. During her testimony, Ms. Moore stated that about two months prior to trial she had been hit by a car whose driver she could not identify. (Tr. 156) Defense counsel moved for a mistrial, arguing at a bench conference that through her statement, Ms. Moore had effectively implicated appellant in the hit and run accident. *Id.* The trial court overruled the motion, but admonished the jury that they were not to use the hit and run evidence against appellant. (Tr. 157)

■ Appellant cites only *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) to support his contention that the testimony concerning the hit and run accident constituted other crimes evidence. While appellant acknowledges that other crimes evidence which is apparent only to defense counsel does not fall within the *Burks* rule, he claims that the prosecutor planted the seed of suspicion in the jurors' minds when, during closing argument, he stated, over objection, that Ms. Moore might have been "very scared about testifying in the [sic] case like this." (Tr. 329) We disagree.

Had Ms. Moore's testimony constituted evidence of other crimes, these other crimes were apparent only to defense counsel. *See Tate v. State*, 732 P.2d 902, 904 (Okl.Cr.1987). If appellant was somehow involved in the hit and run accident, Ms. Moore's testimony did not reveal this fact and was thus not forbidden by *Burks. Id.* Further, we believe that the prosecutor's allegedly prejudicial remarks were nothing more than proper inferences drawn from the evidence. *Brown v. State*, 751 P.2d 1078, 1080 (Okl.Cr.1988). And, any possible error was cured by the trial court's admonishment, as well as by the administering of instruction number 20 which informed the jury of the limited use to which other crimes evidence could be put. (O.R. 73) Appellant's second proposition is denied.

In his third proposition, appellant claims that he was denied a fair trial because the prosecutor improperly commented on his right to remain silent. During cross-examination, the prosecutor asked appellant the following question:

And when you were arrested and your father went about looking for the gun, you were afraid to say anything because you knew that if you said anything, your father would contradict you; isn't that true?

(Tr. 281) Appellant contends that by mentioning his post-arrest silence, the prosecutor violated his right to remain silent. Again, we disagree.

■ Once an accused has received the warning required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), his or her subsequent exercise of the right to remain silent cannot be the subject of prosecutorial comment during impeachment at trial. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). *See also Harrolle v. State*, 763 P.2d 126, 129 (Okl.Cr.1988). However, the failure of an accused to speak *after* arrest but *before* receiving the *Miranda* warning can properly be used for impeachment purposes:

In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a state to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand.

*Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982). *See also Royal v. State*, 761 P.2d 497, 500 (Okl.Cr.1988).

■ The arresting officer in the case at bar, Fred Parke, testified that appellant was not advised of his *Miranda* rights immediately upon arrest, (Tr. 168) but received the warning prior to a police interview later that afternoon. (Tr. 171) We find that the prosecutor's impeachment of appellant regarding appellant's post-arrest but pre-Mirandized silence was proper and not violative of due process. Appellant's third proposition is denied.

■ For his fourth proposition, appellant claims that the trial court erred in allowing the State to present improper rebuttal testimony. He first attacks the testimony of rebuttal witness Jim Helms on the grounds that it constituted inadmissible hearsay, but neither asserts any argument nor cites any authority to support his claim. An appellant must support his or her proposition of error by both argument and citation of authority. *Wilson v. State*, 737 P.2d 1197, 1203 (Okl.Cr.1987). If this is not done and a review of the record reveals no fundamental error, we will not search the books for authority to support appellant's bald allegations. *Id.* We find no fundamental error in the criticized testimony, and will thus not consider appellant's claim.

■ While appellant also alleges that the testimony of rebuttal witness Bruce Duncan concerned collateral matters and thus should not have been admitted, he failed to object at trial to this testimony. (Tr. 294) Unless it is fundamental, error to which an objection is not interposed at trial is waived. *Boyd v. State*, 743 P.2d 674, 676 (Okl.Cr.1987). Our review of this testimony uncovers no fundamental error.

Finally, appellant complains that the trial court improperly allowed the State to reopen its case and question Marcus Ford, a witness who had been called during the State's case-in-chief. Mr. Ford originally testified that he saw a car matching the description of appellant's, which was a burgandy oldsmobile with a black vinyl top. (Tr. 222) In support of reopening the case, the prosecutor argued that during the State's case-in-chief, he had forgotten to ask Mr. Ford about the color of the top of the car. This issue became important because other witnesses had identified from a photo lineup a car with a white top. A timely and specific objection preserved this issue for our review. (Tr. 293–94)

■ Whether to permit either the State or the defense to reopen after they have both closed is within the trial court's sound discretion. *See Jones v. State*, 453 P.2d 319, 320 (Okl.Cr.1969). In the instant case, the State reopened its case to elicit from a previous witness testimony which, through oversight, had not been elicited during its case-in-chief. The trial court properly exercised its sound discretion in allowing it to do so. *See Brassfield v. State*, 719 P.2d 461, 463 (Okl.Cr.1986). *See also* 22 O.S.1981, § 831(4). Appellant's fourth proposition is denied.

■ Appellant claims in his fifth proposition that improper comments by the prosecutor during closing argument deprived him of a fair trial. We are convinced after having reviewed the record that none of the allegedly improper remarks were sufficiently prejudicial to warrant reversal or modification. *See King v. State*, 748 P.2d 531, 535 (Okl.Cr.1988). Appellant's fifth proposition is therefore denied.

■ As a final proposition, we now address an issue which appellant raised by way of motion after having lodged the instant appeal. Appellant, a black man, filed a motion to remand for evidentiary hearing on the grounds that the State had discriminated against him by exercising a peremptory challenge to exclude one of the black jurors from the jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although *Batson* was handed down about one year after the completion of appellant's trial, the Supreme Court held in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), that the *Batson* ruling is "applicable to litigation pending on direct state or federal review or not yet final when *Batson* was decided." *Id.* at 316, 107 S.Ct. at 710. Appellant's direct appeal to this Court was pending on April 30, 1986, the date *Batson* was decided. Therefore, we must consider appellant's alleged *Batson* violation.

With no objection from defense counsel, the State during voir dire excused Juror Watson from the jury panel. While error which is not fundamental is waived for purposes of appeal if an objection was not raised at trial, we note that the *Batson* principles were not yet law when appellant's trial was being conducted. Consequently, defense counsel could not have been expected to have objected to the State's removal of Juror Watson on *Batson* grounds. We will thus consider this issue.

Under *Batson*, a prosecutor is forbidden from excusing potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.*, 476 U.S. at 89, 106 S.Ct. at 1719. *See also Brown v. State*, 762 P.2d 959, 962 (Okl.Cr.1988). An accused may establish a prima facie case of discrimination by showing, first, that he or she is a member of a cognizable racial group. An accused is entitled to the presumption that peremptory challenges permit "those to discriminate who are of a mind to discriminate," *id.* at 96, 106 S.Ct. at 1723, when proving, as the second prong of the prima facie case, that their removal from the jury panel "and any other rele-

vant circumstances raise an inference that the prosecutor used that practice to exclude [them] from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1723. If the accused meets this threshold requirement, the burden shifts to the prosecutor to offer a neutral explanation, related to the particular case being tried, for challenging black jurors.

Because the voir dire proceeding in the instant case had not been transcribed for appeal, this Court, on June 24, 1987, remanded this cause to the district court for an evidentiary hearing to determine these *Batson* issues. The pertinent parts of voir dire were transcribed, and the prosecutor in appellant's case, Mr. Bill Lunn, was questioned as to his reasons for having excused Juror Watson. Based upon these proceedings at the evidentiary hearing, the district judge found that the, prosecutor excused Juror Watson for legitimate, nondiscriminatory reasons. Granting to the trial judge's findings the great deference to which they are entitled, *id.* at 98, n. 21, 106 S.Ct. at 1724, n. 21, we hold that his determination was correct.

Assuming arguendo that appellant made out a prima facie case of discrimination, the record of the evidentiary hearing reveals that Mr. Lunn came forward with a neutral explanation for having excused Juror Watson. Mr. Lunn recalled that Juror Watson not only knew one of the State's main witnesses, but had done some work for this witness for which he had not been paid. According to Mr. Lunn, this prior negative relationship between Juror Watson and one of the State's key witnesses was a reason for excusing the juror from the venire. In addition, Mr. Lunn testified that he often excuses jurors who are unemployed. The jury sheet used by Mr. Lunn during appellant's trial, which was introduced at the evidentiary hearing as State's Exhibit 1, reflected that Juror Watson was unemployed.

We believe that Mr. Lunn's explanation for having excused Juror Watson was racially neutral. Therefore, the State met its burden under *Batson*. Accordingly, this assignment of error is denied.

For the abovementioned reasons, judgment and sentence is AFFIRMED.

PARKS, V.P.J., and LANE and LUMPKIN, JJ., concur.

BUSSEY, J., not participating.