Charles BETTLYOUN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–868.

Court of Criminal Appeals of Oklahoma.

March 29, 1977.

Irvin Owen, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Janet Cox, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The Appellant, Charles Bettlyoun, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–76–94, for the offense of Assault with a Dangerous Weapon, in violation of 21 O.S.1971, § 645. After a trial by jury and on the 22nd day of September, 1976, the defendant was sentenced to a term of three (3) years in the custody of the Department of Corrections. From said judgment and sentence he appeals.

The first witness for the State was Phillip W. Cheatham, who testified that he was a police officer with the Shawnee Police Department. While on duty on the 23rd day of March, 1976, he had occasion to go to a residence at 1905 East 7th Circle in the City of Shawnee, to investigate a disturbance. He arrived simultaneously with several other officers and there interviewed a lady who claimed to be the defendant's mother or grandmother and the owner of the residence above mentioned. This lady told Officer Cheatham that the defendant was inside the house, was creating a disturbance, and that the owner wanted him out because there were two minor children also in the house. The witness testified that being concerned about the two minor children, he went to the front door and knocked on the door and engaged the defendant in conversation; at which time two other officers went to the back of the house in order to enter the same through a window. While the witness was conversing with the defendant at the front door, he testified that the defendant told him he had a shotgun and would blow him up if he came any closer and at the same time hurled an ash tray through the plate glass window of the front of the house. The witness then confirmed with the owner that there was no shotgun in the house but that the defendant did, in fact, have a knife. Upon returning to the front door the officer continued to receive threats and observed objects being thrown through the window which included a chair, a table and more ash trays. Officer Cheatham testified that he first observed the defendant as he came through the front door in the company of two police officers and at that time the defendant was very docile and quiet. The witness did not enter the house until the defendant had been taken into custody and only then to complete his final report.

On cross-examination the witness testified that he had met the defendant's father who had been a Shawnee police officer. He

also testified that he had been on many "family disturbance" calls and that his first job was always to insure the personnel safety of those involved.

Fred M. Merritt next testified that he was also a Shawnee Police Officer; that he went to the above residence on the date in question, at which time he entered the house through a back bedroom, while the previous witness occupied the defendant at the front door. After entering the bedroom through the window, he proceeded toward the hall, at which time he observed the defendant standing in the hall. He noticed a knife in the hand of the defendant, at which time an attempt was made to a stab at or slash at the witness. At this time the officer slammed the door between himself and the defendant and heard the knife strike the door. He testified that the knife blade came within a few inches of his body. A few minutes later he opened the door, told the defendant to drop the knife, but the defendant slashed at him again, and after slamming the door, heard the knife strike the door again. He testified that this activity took place two or three times. Finally the officer opened the door, while the knife was on the ground, at which time the subject fled down the hall. The defendant was finally apprehended without the knife. At this time State's Exhibit No. 1, the knife, was identified and offered into evidence. There was no objection.

The officer testified that the defendant became calm and docile after his apprehension. He also testified that there were twin girls, approximately five years old, located in another bedroom in the house. On cross-examination it was pointed out that the two small children slept through the entire disturbance. Further cross-examination concerned the number of times the knife was actually thrown at the witness.

The next witness for the State was Officer Steve McLaughlin of the Shawnee Police Department. His testimony was essentially the same as that of the previous officer in that he accompanied Officer Merritt through the window into the back bedroom of the home and assisted in apprehending the defendant. He essentially corroborated his testimony concerning the knife. Officer McLaughlin testified that he drew his weapon upon hearing the knife hit the door the first time.

On cross-examination, this witness testified that he did not see the small children asleep in the other bedroom. Further, that the defendant was calm and docile after being apprehended and he observed no force used against the defendant while he was being taken into custody.

At this time the State rested its case in chief, the defendant demurred and moved that the charge be reduced to a misdemeanor, which was overruled.

After making his opening statement, the defendant called as his first witness, Katherine Masquat. She testified that she lived at 1924 East Walnut in Shawnee, Oklahoma and that she was the grandmother of the defendant. She further testified that the father had been gone from the home for approximately six years.

The defense next called Mrs. Lula Mae Bettlyoun, who testified that she was the mother of the defendant. On the evening in question her fifteen year old son and seventeen year old son were in the house when the defendant came in that night. He appeared to be drinking "a little." A scuffle occurred between the defendant and his younger brothers. After the scuffle the two younger brothers and the mother left the house and one of the younger brothers called the police. She testified that she informed the police of what had transpired upon their arrival. She identified State's Exhibit No. 1 as her knife, and stated that she was not concerned about the welfare of the twin girls who had remained in the house.

On cross-examination the witness testified that the defendant was, in fact, drunk. She further testified that there was minor damage to the house and some scratches on the door where "ya'll said he threw the knife." The witness stated that she broke up the scuffle between the defendant and his younger brother in fear that the younger brother might get hurt. She also stated

that she asked the police to calm the defendant down, and that she gave them permission to enter the house.

The final witness was the defendant, who testified that he returned home that evening both mad and drunk. After eating a meal, the defendant got into a "fuss and scuffle" with his younger brothers. After his mother and brothers left, the defendant locked the door and proceeded to undress for bed when he heard the police come to the front door. He stated he told them he had a shotgun and for them not to come any closer when, in fact, he did not have a gun. After hearing a noise toward the back of the house, he grabbed the knife and ran in that direction. The witness indicated that he made a motion with the knife and when the door was shut it caused the door to hit the knife. On cross-examination the defendant testified concerning the purchase of four half-pints of W. L. Wellers and three cases of Coors. He consumed all but a "little bit" of a pint of Wellers and all but three six-packs of the beer. On further cross-examination, the witness stated, concerning the knife, "Yes, I threw it, but it hit the floor and I grabbed it and threw it again." [Tr. 76]

The sole assignment of error urged by the defendant is that the court erred in its failure to sustain his Omnibus Motion for Pre-trial Discovery. The record reveals that prior to trial the defendant filed said Motion containing some nine requests for pre-trial information. The first request in numerical order was that the State be forced to reveal anything tending to negate guilt of the accused, mitigate degree of severity of the alleged offense, or to affect the punishment thereof. The court sustained his Motion on this request, but denied his request for items numbered 2 through 9, which consisted of request for information concerning any threats made to any witness by law enforcement officials, display for inspection all items of physical evidence and photographs, identity of any informants, and that all new evidence be disclosed prior to trial before testimony of proof is adduced in court, the criminal records of any State witnesses, the criminal records of any member of the jury panel, copies of all oral electronic or written confessions of the defendant and any written reports made by the arresting officer.

■ A search of the statutory rules relating to pre-trial discovery in a criminal prosecution in the State of Oklahoma reveals that under the provisions of 22 O.S., § 749, an accused is permitted a copy of any sworn statement of any person, having such knowledge of such criminal offense. The remaining law pertaining to what material a defendant may discover prior to trial has been developed by case law. This Court has long held that pre-trial discovery in criminal cases is not as liberal as that construed by our statutes and cases concerning civil law. One of the earliest decisions by this Court dealing with pre-trial discovery is the case of *Shapard v. State*, Okl.Cr., 437 P.2d 565 (1967), where we adopted the general rule expressed in 23 Am.Jur.2d, Depositions and Discovery, § 317, which provides as follows:

" 'Pretrial discovery and inspection by the defendant of written statements of witnesses or prospective witnesses for the prosecution have been generally denied. Thus, it has been held that an accused is not entitled to discovery and inspection of statements of a prosecution witness in the possession of the state, of the transcript of the statement of a state witness taken before a prosecuting officer preparatory to trial, or of the "work product" of the prosecutor consisting of statements signed by others than the defendant.' "

Further, in *Stevenson v. State*, Okl.Cr., 486 P.2d 646 (1971), this Court found that the American Bar Association Standards for Criminal Justice Relating to Discovery and Procedure Before Trial, excludes from inspection prosecution's work product, identity of an informant, and matters involving national security.

In *Wing v. State*, Okl.Cr., 490 P.2d 1376 (1971), this Court stated:

"As to pre-trial discovery and inspection of articles in the possession of prosecut-

ing authorities, this Court has held there should be disclosure of technical reports, an alleged death weapon with reports concerning same, defendant's statement to police, a record of prior criminal convictions of intended witnesses, and material which tends to negate the defendant's guilt or that would tend to reduce his punishment. *This is not to say the defense is entitled to an aimless 'fishing expedition,' and we have denied inspection of a prosecutor's work product or a detective's personal notes not subject to introduction into evidence."* [Footnotes omitted, emphasis added]

■ In summary, we cannot find authority, nor do we intend to create authority, which would require this Court to reverse or modify a verdict following the trial court's decision to overrule an Omnibus Pre-trial Discovery Motion. In the instant case the record is totally void of any showing on the part of the defendant that the action of the trial court in overruling the majority of his Motion worked in any way to prejudice or deny the fundamental rights of the defendant. We spoke to this very issue in *Wing v. State,* supra, when we stated:

"A criminal trial is not a game of hide and seek, and we are committed to the concept of full pre-trial discovery where reasonable and practical. However, in the case at bar defendant has not sustained his burden of proof showing a prejudicial denial of pre-trial inspection of items in the possession of the State. Defendant's motion was general in terms, and he has not shown any material prejudice or injury resulting from the denial. Defendant did not ask for a continuance on the basis of the denial of inspection, nor did he seek an extraordinary writ before trial. See *Doakes v. District Court* [Okl.Cr., 447 P.2d 461 (1968)]. *We will not reverse a conviction of the mere speculation that a denied pre-trial inspection and disclosure might have been helpful to the defendant. . . ."* [Emphasis added]

In the instant case, the defendant totally failed to show that any of the items denied him in his request 2 through 9 ever existed. The record reveals that the only item of physical evidence introduced in the trial was the knife itself which was *not* accompanied by any technical report. There was no confidential informant involved in the case, all of the State's witnesses were police officers, subject to cross-examination as to their credibility and there was no attempt to introduce into evidence any electronic or written statements of any parties or witnesses involved. Furthermore, the record reveals that it is very unlikely that the results would have been any different had this Motion been granted, as the defendant himself took the stand and admitted throwing the knife at a uniformed police officer. [Tr. 76]

■ We, therefore, hold that excepting those items which are subject to pre-trial discovery and heretofore enumerated by this Court, such as written confessions, technical reports and criminal records of prospective prosecution witnesses, we affirmatively state that there must be a showing on the part of the defendant that the Motion for Production is based upon facts, not conclusions, or mere surmise and conjecture. A blanket request will not be granted, merely in hope that something will turn up to aid the defendant. Some materiality in regard to the defendant's fundamental rights must be shown.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly AFFIRMED.

BLISS, J., concurs.

BRETT, J., concurs in results.