Charles Martin THOMSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–401.

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1984.

Rehearing Denied Feb. 24, 1984.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Charles Martin Thomson, appellant herein, was convicted in the District Court of Oklahoma County, Case No. CRF–81–4366 of Robbery with Firearms, After Former Conviction of a Felony. He was sentenced to fifteen years' imprisonment, and appeals.

Evidence adduced at the appellant's trial was as follows:

At approximately 12:30 p.m. on September 23, 1981, the Handy-Pak convenience store at N.W. 13th and Broadway in Oklahoma City, Oklahoma was robbed at gunpoint. The person who robbed the store was a man approximately 5 ft. 6 or 7 in. tall, weighing approximately 140–150 pounds, having a thick mustache and although otherwise clean-shaven, having a heavy "shadow" of a beard. He was wearing an undersized blue baseball cap and a black wig on his head, a large pair of multicolored ladies sunglasses over his eyes and a blue bandana handkerchief around his neck. This person was eating food which he had gotten from the store, without having paid for it, which caused the manager to observe him. When he noticed the manager watching him, the man assured him he would pay, and continued watching a video game.

Shortly thereafter, the man held a pistol to the stomach of the person playing the video game, and forced him up to the counter. The robber instructed the manager and a clerk to give him money from the cash register and a bag of receipts. He made the three persons lie in the floor, and ran away.

Two persons approaching the store in an automobile saw the man running away, and deduced that he had just robbed the store. They followed him in their car until they saw him get into a white Plymouth or Dodge bearing Oklahoma license tag number YJ 1775. Three other persons were in the white car. The two citizens reported their observations to the police.

While investigating an unrelated incident the next day, Oklahoma City Police Officer Charles Moore observed a white Dodge automobile with Oklahoma license tag number XJ 1775. He contacted the officers investigating the Handy-Pak robbery, and was informed the car had been linked to the robbery.

Officer Moore found the apartment where neighbors reported the person(s) associated with the car were located. The owner of the car, Cloe Bell Jackson, was inside the apartment.

As he stood inside the apartment talking to Ms. Jackson, Officer Moore saw several wigs, including a black one; a blue bandana handkerchief; and a pair of ladies' multicolored sunglasses. These items were subsequently taken into custody. Ms. Jackson was later arrested in connection with the matter.

Officer Glen Mullins testified that he was informed by Ms. Jackson that on September 23, she loaned the car to a person matching the description of the robbery suspect. She informed him that the person to whom the car had been loaned resided at the Thunderbird Pre-Release Correctional Center (hereinafter called the TCC) in Oklahoma City. Officer Mullins went to TCC, and matched the suspect description with photographs there. He selected the appellant's photograph.

Officer Mullins assembled a photographic lineup consisting of five pictures, including the appellant's, and showed it to various witnesses. Several of the persons selected the appellant's photograph as the person who robbed the store.

A warrant for the appellant's arrest was then issued. He was arrested thirty days later in Tulsa.

The appellant took the stand in his own defense. He testified that, at approximately 9:30 on September 23, 1981, he left TCC on a state van for a job interview at N.W. 122nd Street and May. He stated that he filled out an application and talked to someone there between 11:30 a.m. and 12:30 p.m. He then called TCC and was informed that he could not be picked up by a van until 2:30. Instead of waiting, he hitchhiked back to TCC. He arrived at TCC at 1:15. He was paroled at 2:15, that afternoon.

He also testified that in 1978 he committed 13 felonies, and pled guilty to three of them.

The appellant testified upon cross-examination that his application for employment at the business on 122nd Street and May Avenue could not be found, because the business had changed management. He also testified that the man with whom he interviewed, Mr. Phillips, could not be found.

The appellant's second witness was Robert E. Thomas, a Department of Corrections employee. Thomas testified that, on September 23, all the persons going for job interviews left TCC at 9:30 a.m. Later, the appellant called him at TCC, and asked permission to go on a second interview. Thomas did not know what time he received the call. Thomas informed the appellant that he had been paroled. The appellant replied that he would be right in. The appellant arrived at TCC at 1:15.

Upon cross-examination, Thomas acknowledged his records reflected that the person the appellant claimed to be interviewing with at 12:30 p.m. had checked into TCC at 12:00 p.m. Thomas also testified

upon cross-examination from documents that the state van delivering TCC residents to job interviews stopped at the business on N.W. 122nd Street and May at 11:45; and that the van was called to 5th and Robinson, which was seven blocks from the crime scene, at 12:10 p.m.

The appellant's third witness was Joseph B. Rice, the driver of the van in issue on September 23. Rice testified that according to the records he kept, he dropped the appellant off at the N.W. 122nd and May Avenue business at 11:45 a.m. that day.

Upon cross-examination, Rice admitted having two forgery convictions. He also stated that he had earlier told two investigators from the District Attorney's office that he did not remember whether the appellant was on the van on September 23. He testified upon re-direct examination that he did not recognize the appellant's name, but that a picture refreshed his memory, and he recalled the appellant being on the bus that day. He also stated that there were no persons on the van when he drove it to 5th and Robinson.

The appellant's third witness was John Hoagland, a corrections officer at TCC. On direct examination, he stated that the van was at 122nd Street and May Avenue at 11:45 a.m. and at 5th and Robinson at 12:30 p.m.

The appellant's fourth witness was his mother, Bell Thomson. She testified that the appellant had changed for the better since his incarceration.

The appellant's final witness was his fiancee, Carla Rene Fowler. She testified that she picked the appellant up at TCC at approximately 2:00 on September 23, because he had been paroled. After relating the events surrounding his arrest, Fowler stated that she went to visit the appellant in the Oklahoma County jail, and was directed to the cell of a man named Charles *Major* Thomson. She said the man had the same birthdate as the appellant, and was

also being held for robbery, but that he was not of the same race.[1]

The State introduced the rebuttal testimony of Department of Corrections employee Richard Seagle. Seagle testified that Joseph Rice, the van driver who had previously testified on the appellant's behalf, could not remember whether the appellant had exited the van at 122nd Street and May Avenue on September 23.

In his first assignment of error, the appellant argues that the trial court committed fundamental error in failing to exclude the in-court identification of him as the person who robbed the Handy-Pak. He argues that the pretrial photographic lineup in which his picture was selected by witnesses as the robber was unnecessarily suggestive, and that the lineup tainted the in-court identification.

■ The appellant did not file a motion to suppress the identification, or request an in-camera hearing on the matter. The issue has therefore been waived. *Hair v. State*, 597 P.2d 347 (Okl.Cr.1979). In addition, he has failed to include the photographic lineup in the record on this appeal, thereby limiting our review for fundamental error to the information which can be gleaned from testimony concerning the matter. We have found nothing therein to support his contentions, or to otherwise demonstrate fundamental error.

■ The appellant did attempt to impeach the in-court identifications by the Handy-Pak clerk and manager with their preliminary hearing testimony. The credibility was for the jury to determine. See, *Carson v. State*, 529 P.2d 499 (Okl.Cr. 1974). The appellant contends, however, in his second assignment of error that the jury could not properly do so because no "eyewitness identification" instruction was given.

In instruction number sixteen the trial court instructed the jury in pertinent part,

You are the judges of the facts, the weight of the evidence and the credibility of the witnesses. In determining such weight or credit, you may consider: ... the ability of the witness to remember and relate past occurrences, and means of observation, and opportunity of knowing the matters about which the witness had testified. (Or. 39).

■ The fact that this instruction adequately addressed the issue, coupled with the appellant's failure to object to or submit an alternative for the instruction, leads us to conclude the assignment of error is without merit. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr.1982).

■ Lastly, the appellant complains of comments made by the prosecutor during closing arguments. He argues that the prosecutor misstated the evidence concerning the appellant's prior convictions in the second stage by arguing that the appellant had committed armed robbery fourteen times (i.e. the thirteen felonies the appellant said he committed in 1978, plus the present robbery with firearms conviction). We fail to see how the comment prejudiced him. He was convicted of Robbery with Firearms, After Former Conviction of *A* Felony, and received fifteen years; although the evidence was that he had three prior valid convictions.

■ The other two comments complained of were not met by objection or request for admonishment to the jury, thereby waiving resulting error, if any, save that of fundamental nature. *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983). We have reviewed the comments for fundamental error in Appendix A, and having found none, hold this assignment to be without merit.

The judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.

---

**1.** The appellant has hinged one of his arguments concerning prosecutorial misconduct upon this fact. See Appendix A.

## APPENDIX A

The appellant claims that the prosecutor attempted to mislead the jury with the following:

(Upon direct examination of appellant's witness)

So the defendant was in the same van that went to the location within seven blocks of 13th and Broadway; is that correct? (Tr. 175).

and,

(During closing argument)

And if you'll look at that record, that van went within seven blocks of the spot that was robbed, within fifteen or twenty minutes of 100 North Broadway, the place that was robbed ..." (Tr. 239).

We are convinced that the prosecutor's question and argument were permissibly inferred from the facts of this case. *Hill v. State*, 589 P.2d 1073 (Okl.Cr.1979).

The appellant also argues error occurred when the prosecutor stated in closing arguments that the suspect described by witnesses and victims of the Handy-Pak robbery was a white person. He attempts to demonstrate prejudice from this remark by emphasizing the coincidental misdirection of his fiancee, Carla Rene Fowler, to the Oklahoma County jail cell of Charles *Major* Thomson. (The similarities giving rise to this misdirection are reported in the body of the opinion). This Court fails to see how this unusual happenstance demonstrates prejudice. The appellant was not identified by his name or birthdate, but rather by the observations of witnesses to and victims of the robbery. We are convinced that there was sufficient evidence, albeit partially circumstantial, that the appellant committed the crime to support the jury's verdict. We therefore find no fundamental error in the prosecutor's statement.