Steven WILSON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–337.

Court of Criminal Appeals of Oklahoma.

May 6, 1987.

Rehearing Denied June 5, 1987.

 

Ken Johnston, Chickasha, for appellant.

Michael C. Turpen, Atty. Gen., F. Andrew Fugitt, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BUSSEY, Judge:

The appellant, Steven Wilson, was convicted in the District Court of Grady County, Case No. CRF–82–93, of Murder in the First Degree, and sentenced to life imprisonment, from which he appeals.

About 6:15 a.m. on May 12, 1982, the appellant telephoned the Tuttle Police Department and stated that he had found his eleven-year-old stepdaughter, Audra Methany, dead in her bed. Police and ambulance personnel were immediately dispatched. When they arrived, the emergency medical technicians examined her and concluded she had died of natural causes. The body was transported to the Grady County Medical Examiner, Dr. Elaine Soter, for examination. Her findings were inconsistent with natural death. Subsequently, an autopsy was performed by the Chief Medical Examiner for the State, A.J. Chapman, who concluded the victim had been raped and suffocated. Police Chief Kevin Coder was informed of Dr. Chapman's finding about 1:00 p.m. that day, and Coder arrested the appellant.

█ In his first assignment of error, the appellant argues that his arrest was illegal. He cites *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where the Supreme Court held that police officers may not make a warrantless and nonconsensual entry into a suspect's home in order to make an arrest unless exigent circumstances exist. When this issue was raised in the pretrial motions, the trial court found that the appellant invited the police officers into his home. (Tr. 18) The record reveals that the appellant called the police about 6:15 a.m. on May 12, 1982 to report that he had discovered that his stepdaughter was dead when he had gone into her room to awaken her for school. The police arrived at about 6:30, and reported to the appellant that his step-daughter's death appeared to be from natural causes. By 9:00 a.m., all the police officers had left the residence. One of the officers, Mike Anderson, returned at 10:00 a.m. to report that there was no word yet as to the cause of death. He stayed only a few minutes. Chief Coder, testified that during the time that the officers had been in the home, he was given permission to search the home by both the appellant and his wife, who was contacted by Coder in Lake Tahoe where she was visiting her family. Mrs. Wilson confirmed when she testified that she gave her consent to search. About 1:00 p.m. Chief Coder talked with the Medical Examiner's Office, was told that the girl had been raped, and he went to the appellant's house and arrested him. In *Payton*, two cases were consolidated for review. In one case, police officers used crowbars to break into the defendant's apartment. In the other case, police were admitted to the defendant's residence by his young son. The *Payton* case emphasized that under both sets of facts the entries into the homes were made without the consent of any occupant. *Payton*, 445 U.S. at 583, 100 S.Ct. at 1378. The Court stated that the chief evil was the physical entry into the home. We note that in the case at bar, we find no evidence in the record that the third entry into the home of the appellant on that day was nonconsensual. Furthermore, appellant does not claim in his brief that the entry was nonconsensual. Therefore we find this assignment of error to be without merit.

█ In his next assignment of error the appellant alleges that the two day delay in bringing him before a magistrate was prejudicial to him and was therefore a denial of his due process rights. A defendant has the burden to establish prejudice by reason of delay between his arrest and his appearance before a magistrate. He claims that he requested an attorney and was not given one so that the tape recorded statement he made to police officers and a comment he made while giving certain

body samples were prejudicial.[1] He further claims that a surpressed statement he made during a polygraph examination precluded him from taking the stand in his own defense. However, the record reveals that all of the statements the appellant made were voluntary, that he did not ask for an attorney but only related to officers after the body samples were taken, that he was going to get an attorney. After hearing the evidence the trial judge ruled that these statements were voluntary. The evidence supports the ruling of the judge, although this Court does not approve of any delay in taking a defendant before a magistrate, we have found no prejudice in cases involving longer delays. *See In re Dare*, 370 P.2d 846 (Okl.Cr.1962) (thirty-three days), *Smith v. State*, 462 P.2d 328 (Okl.Cr.1960) (ten days), *Dimsdle v. State*, 456 P.2d 621 (Okl.Cr.1969), *cert. denied*, 396 U.S. 966 (1969) (six days). We likewise find this delay did not prejudice the appellant.

The third assignment of error contends that the search and seizure of items in the appellant's home was illegal because no search warrant was shown. We disagree. Where a search is conducted pursuant to a voluntary consent, a search warrant is unnecessary. *Kennedy v. State*, 640 P.2d 971 (Okl.Cr.1982). Evidence was presented that both the appellant and his wife consented to the search. Whether evidence should be suppressed is within the trial court's sound discretion, and this Court will not reverse the trial court upon a question of fact where there is a conflict of evidence and there is competent evidence reasonably tending to support the judge's findings. *Isom v. State*,

646 P.2d 1288 (Okl.Cr.1982). This assignment of error is meritless.

In another attempt to show that his out-of-court statements should have been suppressed, the appellant claims in his fourth assignment of error that he asked for an attorney, but was not given one. A review of the record reveals that the appellant was advised of his rights on more than one occasion, voluntarily gave statements, and allowed certain body samples to be taken. After hearing this testimony, the trial court admitted the evidence the appellant was attempting to suppress. We find that under the rule stated in *Isom*, there was no abuse of discretion by the trial court.

The appellant's fifth assignment of error argues that body samples should have been excluded because they were taken without an independent judicial determination, there was not a valid consent, and the chain of custody was incomplete. Concerning the first two assignments, an independent judicial evaluation is not necessary if there is a valid consent. After hearing the evidence and the arguments by counsel, the trial court admitted the samples. A review of his taped statement and the testimony of officers reveals that competent evidence existed for the judge to determine that the samples were given voluntarily. We do not find any error. Concerning the chain of custody argument, the appellant states that because the blood was drawn by Dr. Bruce Storms, and he was not called as a witness, and because hairs belonging to Dr. Elaine Soter[2] were sent to the criminologist, Ann Reid, through the U.S. Mail, the State did not meet the chain of custody requirements. The party offering demons-

---

1. When police first arrived at the appellants' home he told the emergency medical technicians in response to their questions that he had gone into the bedroom of the deceased to wake her for school and found her dead. He had stated earlier to one officer and again in a tape recorded statement after his arrest that she had awakened during the night and around midnight he had heard her coughing and gagging as though she would throw up. He had asked her if she was alright and she had replied that she felt sick. He told her to lay down and get some rest, that she would feel better in the morning. He did not go to check on her. When the

appellant was taken to the hospital to allow medical personnel to take samples of body hair and body fluids, the appellant volunteered the statement, "I tried to help Audra breathe. You know, I don't understand all of this."

2. Dr. Soter submitted samples of her head hair so that the Oklahoma State Bureau of Investigation could make comparisons with a head hair which was not consistent with any sample the O.S.B.I. had in its possession. That hair remained unmatched.

trative evidence must show that there has been no alteration or tampering with the exhibit. *See Kennedy.* Showing that there is no possibility of alteration is unnecessary. *Hauschildt v. State,* 554 P.2d 77 (Okl.Cr.1976). Where there is speculation that tampering could have occurred, any doubt goes to the weight of the evidence, and not its admissibility. *Trantham v. State,* 508 P.2d 1104 (Okl.Cr.1973). As there is no serious question of tampering revealed in the record, we find this assignment of error to have no merit.

■ The appellant next urges that the trial court erred in denying his Motion to Discover the State's jury list with comments. The record does not reveal the grounds for the trial court's denial. There is nothing to show that the appellant was denied or prejudiced in his fundamental rights by the court's ruling, and we find no merit in this assignment of error. *See Bettyloun v. State,* 562 P.2d 862 (Okl.Cr. 1977).

■ In his seventh assignment of error, the appellant complains that the trial court erred in denying his motion to quash the jury panel. After the judge had excused potential jurors for hardship reasons, a panel was left consisting of forty-eight veniremen. At the end of the first day of the trial and before a jury had been selected, the panel was depleted. The trial court ordered the court clerk to recall jurors. Those who were recalled had appeared on the jury the week before, or were on standby from a previous term. (Tr. 434). The record states that the jurors were selected at random from those groups. Title 38 O.S.1981, § 22 provides the method for selecting additional jurors when there is a deficiency. This method was not followed in the case at bar. However, other than his speculation that these recalled jurors could be "resentful" as the result of the recall, the appellant does not show how the irregularity resulted in depriving him of any substantial right. *See* Title 38 O.S.

1981, § 29.[3] We therefore find this assignment of error to be without merit.

■ The appellant next assigns as error the overruling by the trial court of his request for individual voir dire of the prospective jurors. He alleges that he was unable to inquire into possible prejudice of certain jurors resulting from personal involvement in cases involving rape or incestual activities. The rule is well established that individual examination of prospective jurors is within the discretion of the trial court. *Irvin v. State,* 617 P.2d 588 (Okl.Cr. 1980). We find no abuse of that discretion. This assignment of error is likewise meritless.

■ In his ninth assignment of error the appellant maintains that the trial court erred in refusing to allow rehabilitation of prospective jurors regarding the death penalty. The court conducted the voir dire and did not allow either the State or defense to ask questions on the subject. The appellant contends that by refusing to allow rehabilitation of jurors, the trial court had aligned itself with the prosecution, and that by excluding any and all jurors who were reluctant to impose the death penalty, the court made possible the formation of a prosecution-oriented jury. The Supreme Court of the United States rejected the argument that a constitutionally impartial jury can be constructed only by balancing the various predispositions of individual jurors, holding that an impartial jury consists of nothing more than "jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree,* 476 U.S. 162, ——, 106 S.Ct. 1758, 1767, 90 L.Ed.2d 137, 151 (1986) quoting *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The appellant's bald assertions are insufficient to show that the jury in his trial was biased against his cause. This assignment of error is without merit.

■ The appellant additionally complains that the trial court excused a juror

---

**3.** Title 38 O.S.1981, § 29 provides: "... A substantial compliance with the provisions of this chapter, shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, and summoning or implaneling the same, resulted in depriving a party litigant of some substantial right...."

on its own motion, but does not cite any supporting authority. The rule is well established in Oklahoma that a failure to cite authority in support of a contention is insufficient to raise the issue for consideration by the reviewing court. *Cales v. State*, 648 P.2d 838 (Okl.Cr.1982). Therefore we shall not address this issue.

◼ In another assignment of error involving jury selection, the appellant asserts the trial court erred in granting counsel one additional peremptory challenge, and then resticting its use to the final two jurors selected. The cases cited by the appellant are not on point as they are cases in which the defendants who requested additional peremptory challenges were denied because the trial court was without statutory authority to grant additional peremptory challenges. *See Gray v. State*, 650 P.2d 880 (Okl.Cr.1982). In the case at bar, a juror who had been seated on the jury asked to be excused for health reasons and the trial judge granted the request. The State requested that under the circumstances, an additional peremptory challenge be granted, which the court allowed. We fail to see, and the appellant does not relate how he could have been prejudiced by this procedure. Additionally we find that the trial court in granting the request, properly restricted the challenge to the remaining jurors to be selected. Finding no error requiring reversal, this assignment of error is without merit.

◼ The appellant's twelfth assignment of error alleges that the trial court improperly admitted photographs of the deceased because they were taken after the emergency medical technicians had attempted to revive her. He claims that the body and clothes were arranged afterward and the photographs were not admissible. The record reveals that the body was not moved. Only the bed clothing and the victim's pajama top were moved in an attempt to take blood pressure and attach EKG leads. One of the emergency medical technicians who had been present at the time testified that each of the photographs were true and accurate representations of the scenes they depicted, which he described

and personally observed the morning of May 12, 1982. Photographs are admissible as apropriate aids to the jury when they are shown to be faithful reproductions of whatever they purport to reproduce. *Billy v. State*, 602 P.2d 237 (Okl.Cr.1979). As those photographs were admissible to show the position of the body, and appellant cannot state how he was prejudiced by the admission of the photographs, we find this assignment of error has no merit.

◼ Appellant's next assignment of error urges that he should have been allowed to inquire into specific bad acts of the State's witness, Kevin Coder, who was being investigated for misappropriation of public funds, and who was at that time suspended from the Tuttle Police Department without pay. During an in camera hearing, the trial judge advised Mr. Coder of his Fifth Amendment rights and asked if he wished to stand on them concerning the matter for which he was being investigated. He stated that he did wish to invoke those rights. The trial judge, at the conclusion of the hearing, ruled that he could be questioned before the jury about whether he was under investigation for misappropriation of funds entrusted to him, and if he was suspended without pay, but he could not be asked if he had actually misappropriated those funds, thereby forcing him to invoke the Fifth Amendment before the jury. Title 12 O.S.1981, § 2608(B) provides that specific instances of the conduct of a witness may be inquired into on cross-examination if probative of his character for truthfulness or untruthfulness. But allowing this line of questioning is within the discretion of the trial court. As the trial judge allowed defense counsel to bring to the jury's attention that Mr. Coder was under investigation, and was suspended without pay, we do not find any abuse of the court's discretion.

◼ The appellant's fourteenth assignment of error complains of comments made by the State's witness, Dr. A.J. Chapman, during his testimony. We note that no contemporaneous objection was made to any of the comments, and they were therefore not properly preserved for review.

*Thomson v. State,* 676 P.2d 857 (Okl.Cr. 1984). He also complains of an alleged evidentiary harpoon, stating that Dr. Chapman intentionally allowed the jury to see autopsy photographs which were previously ruled inadmissible. The portion of Dr. Chapman's testimony cited by the appellant gives no indication of whether or not he allowed the jury to see the photographs, or if he did, how they were displayed, or for how long. Additionally, no objection was made. Unless an objection is made to an evidentiary harpoon, any errors are waived and cannot be raised for the first time on appeal. *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980). Finding no error requiring reversal, this assignment of error is meritless.

In his next assignment of error the appellant contends that the trial court improperly permitted his spouse to testify concerning privileged matters. She testified regarding his sexual desires and habits which appellant argues should have remained confidential under 12 O.S.1981, § 2504. The appellant states that this statute should be construed to mean that the privilege is abrogated and allows a spouse to testify against the other only if that testimony directly concerns a crime committed against the spouse's child. We cannot agree. The statute reads "There is no privilege ... in a proceeding in which one spouse is charged with a crime against the person or property of ... a child of either...." In such a criminal proceeding, the privilege no longer exists. The question of whether the spouse's testimony directly concerns the crime committed becomes a relevancy question and not a question of privilege. We find no error in the trial court's ruling.

His sixteenth assignment of error argues that the trial court should have sustained his demurrer to the State's Information, and should have provided additional jury forms. The basis for this argument is that the appellant was charged with First Degree Murder through either malice aforethought or during the commission of a felony. We addressed this identical issue in *Plunkett v. State,* 719 P.2d 834 (Okl.Cr.

1986) where we held that the offense of First Degree Murder could be committed through two means: with malice aforethought, or while engaged in the commission of a felony, and that failure of a jury to indicate the basis of their finding of guilt was not error. Accordingly, this assignment of error is without merit.

The appellant's seventeenth assignment of error alleges improper jury instructions. He cites five instructions, states briefly what they should have said, but makes no further argument and cites no authority. An appellant must support his allegations of error by both argument and citation of authority. Where this is not done, and it is apparent that the appellant has not been deprived of any fundamental rights, we will not search the books for authorities to support mere assertions that the trial court erred. *Perez v. State,* 614 P.2d 1112 (Okl.Cr.1980). We have examined the instructions listed, and do not find any fundamental error.

The appellant also requested the court to instruct the jury on the lesser included offense of murder in the second degree. As we held in *Irvin v. State,* 617 P.2d 588, 596 (Okl.Cr.1980), "where there is no evidence to support a lower degree of the crime charged or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider the issue." The appellant argues that evidence presented during the trial could have been viewed by the jury to support the conclusion that the victim's death was perpetrated by an act imminently dangerous to her, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect her death, which under the statutes would be second degree murder. 21 O.S. 1981, § 701.8(1). The appellant presented some evidence in an attempt to show that the victim died of natural causes, and some evidence in an attempt to show that if she was raped and asphyxiated, he was not the assailant. There was no evidence presented by the defense or the State that the appellant killed the victim through an imminently dangerous act without a premeditat-

ed design to do so. We find that this assignment of error has no merit.

In his eighteenth assignment of error the appellant maintains that prosecutorial misconduct committed by the district attorney violated his constitutional rights. Of the twelve comments which the appellant cites, five were not preserved for review because the appellant failed to make a contemporaneous objection, or failed to ask that the jury be admonished to disregard the comment. *Stevenson v. State*, 647 P.2d 437 (Okl.Cr.1982). In two of the comments of which the appellant complains, references are made to the death penalty. The trial court had instructed counsel not to discuss the death penalty during voir dire. The prosecutor during questioning concerning Murder in the First Degree stated it is the most serious crime in our statutes, the only crime that even allows consideration of the death penalty. The court sustained an objection and admonished the prosecutor. We find that the appellant was not prejudiced by this remark, especially since he received a life sentence. The second mention of the death penalty came during the first stage of trial. The prosecutor, in response to defense counsel's closing remarks said that the implication of four State witnesses lying to the jury would be that these four people would have to live with their consciences for the rest of their lives if they lied to get a finding of guilt and the death penalty. (Tr. 1328). The trial court sustained an objection and the trial court admonished the jury that they were not to consider any references to the death penalty. We find that the error was thereby cured. *See Wimberli v. State*, 536 P.2d 945 (Okl.Cr. 1975).

Two acts of the prosecutor of which the appellant complains concern photographic exhibits. Defense counsel moved for a mistrial when unintroduced photographs were left on the prosecutor's counsel table in view of the jury. The trial court denied the motion stating that there was no indication that the jury had seen them. We find no abuse of trial court's discretion as the judge was present to determine what could be observed. Defense counsel also objected when the prosecutor requested that he be allowed to pass certain photographs to the jury. When the court determined that they had not yet been admitted, he admitted them over the objection of defense counsel. We find no error.

The appellant next complains of a disagreement over the origin of some photographic negatives, which occurred when defense counsel attempted to offer them into evidence. Except for the objection to the admission of the negatives, all of the argument occurred outside the presence of the jury. We find no error.

Next, the appellant complains because the prosecutor in his first closing argument made two remarks that referred to, or implied a second stage of trial. His first remark was that he would have a further comment to make on a particular item of evidence in a later stage of the trial. (Tr. 1257, 1258). His second remark was that he wished to comment on a particular photograph "in the first stage of this case." Following the sustaining of defense counsel's objection, the prosecutor stated to the jury that he would again be addressing them after defense counsel gave his closing argument, and at that time he would go into more detail on some of the evidence. Although the term "first stage" has a special significance to attorneys in referring to a bifurcated trial, the term would not necessarily have the same meaning to jurors. Given the prosecutor's explanation, we find no error.

The last comment of which the appellant complains concerns remarks concerning hairs which were on the victim's clothing. The prosecutor in his closing argument spoke of these hairs as coming from the appellant. Defense counsel objected and was overruled although the court admonished the jury again that the evidence is what the jury recalled and not what counsel stated. Additionally, when the prosecutor continued his argument, he stated that the testimony had been that the hairs on the victim's clothing were microscopically consistent with the appellant's

hair. The prosecutor may make reasonable inferences from the evidence adduced at trial. *Faulkner v. State*, 646 P.2d 1304 (Okl.Cr.1982). The jury could have deduced from the evidence that the hairs belonged to the appellant, and so this assignment of error has no merit.

 In his last assignment of error the appellant states that after the trial was over, defense counsel learned that the prosecutor did not fully comply with appellant's discovery motion as granted by the trial court. The appellant had requested the name of any physician who would agree with appellant's defense that a man who has had a vasectomy cannot possibly emit sperm. During the trial, evidence had been presented that seminal fluid was found on the vaginal swab of the victim, but no sperm was found. However, a bath towel which was found in the appellant's home had one sperm on it. (Tr. 922). The appellant contended that because a sperm was found, and he was unable to emit sperm, someone else had been present in his house. Appellant attached an affidavit to his Petition In Error from Dr. Bill Crowell who stated that he had been contacted on November 4, 1982 by the prosecutor who inquired if a man who had had a vasectomy could still ejaculate sperm. Dr. Crowell told him that if the vasectomy was properly done, there would not be a way that a man could ejaculate sperm. He then gave the prosecutor the name of a local physician to contact for the effect of a vasectomy on the male reproductive system. The appellant claims that the failure of the prosecutor to provide Dr. Crowell's name to the appellant was a violation of the holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) that suppression by the State of exculpatory evidence which is specifically requested by a defendant violates due process. In the appellant's trial, evidence was presented that a vasectomy had been performed on the appellant five years prior to the trial. Dr. David Trent testified for the appellant that when a vasectomy is properly done, a man cannot pass sperm outside of his body. He further testified that tests on the appellant showed that his sperm count was negative,

with no identifiable sperm present. Therefore we are unable to find that the appellant was prejudiced by the failure of the prosecutor to obey the discovery order. Finding no prejudice, this assignment of error is meritless. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

The judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.