Gary Allen PARSONS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–474.

Court of Criminal Appeals of Oklahoma.

July 20, 1987.

Rehearing Denied Aug. 20, 1987.

Michael Avant-Pybas, Mustang, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Gary Allen Parsons, was convicted in the District Court of Oklahoma County, Case No. CRF–84–3787, of First Degree Manslaughter, and· sentenced to ninety nine years' imprisonment. He appeals raising eight assignments of error.

On July 31, 1984, the appellant and two of his friends, Michael Checotah and Jimmie Wilmoth spent the evening drinking alcohol, smoking marijuana and ingesting cocaine at the home of Mike Mayfield, where the appellant was residing. Later in the evening, the group of teenagers encountered Kelly Emslie at a local convenience store, whereupon Emslie related how he and a friend had been ejected from Thornton Wolfe's apartment because of Emslie's intoxication and for destroying Wolfe's personal property. He recounted how Wolfe had beaten him up and taken his money, whereupon the youths agreed to help Emslie in a plan to ambush and assault Wolfe. The group then returned to the Mayfield residence and the appellant retrieved a loaded pistol from underneath one of the beds, which was to be used to scare Wolfe, and concealed the weapon in his jeans. After the boys arrived at the apartment, they awoke Wolfe and persuaded him to "get high" with them at the treehouse, an elaborate three story structure used for the purpose of having drug parties. As the group climbed into the treehouse, Wilmoth decided to go back to the car and search for Emslie.

Testimony revealed that Wolfe became agitated when he discovered the boys did not have any marijuana and became inquisitive as to why he was brought to the treehouse. The appellant then attested to the fact that he did not remember firing the shot, but heard a shot, a thud of a body, and looked down at the gun in his hand. The appellant and Checotah then ran to the car, and met the other two boys. The four then fled the scene in Checotah's car, and left Wolfe to die in the treehouse. Checotah then proceeded to tell the appellant "that was the coolest thing you ever did. It was like being high". After taking Emslie home, the three teenagers returned to the scene of the crime. While Wilmoth waited in the car, the appellant and Checotah returned to the treehouse to observe Wolfe. The appellant then threw Wolfe's body off the top tier to the lower tier of the treehouse and then both youths proceeded to stomp and kick it. The pair then removed an apartment key from the body, and the three drove to Wolfe's apartment and removed stereo speakers, drugs, money and other various articles.

The appellant argues as his first assignment of error that the police allowed crucial evidence to be destroyed and therefore violated his right to due process. Shortly after the police concluded their investigation of the crime scene, and before the appellant's trial counsel entered his appearance, the treehouse, the tree it was in, and the surrounding area was completely leveled, making it impossible for trial counsel to investigate the crime scene. Appellant claims that he was prejudiced because another young man, Mike Mayfield, had privately confessed to the murder of Wolfe, and because there was no longer any crime scene, corroboration was not possible. On

the witness stand, Mayfield admitted that he had told his girlfriend that he had killed Wolfe, but called her two hours later and told her it was actually the appellant who had killed him. There was no evidence that Mayfield was even present at the scene of the crime. The appellant testified that Mayfield had stayed at home when the appellant and three others had gone to Wolfe's apartment, and further testified that he heard a shot and saw the gun in his hand. Where a defendant presents no proof that any exculpatory evidence was destroyed by police, and fails to disclose bad faith on the part of the police in their failure to preserve a crime scene, such a failure does not necessitate reversal or modification. *Standridge v. State*, 701 P.2d 761 (Okl.Cr.1985). This assignment of error is meritless.

 The appellant next complains that severance should have been granted where hearsay remarks made by codefendant Checotah were admitted. The appellant claims that those remarks were accusatory, prejudicial, and in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). When statements of codefendants are antagonistic, or when a codefendant has not been linked to the crime by evidence independant of the other defendant's statement, severance of trials may be required to prevent prejudice. *Liles v. State*, 702 P.2d 1022 (Okl.Cr.1985). In the case at bar, the statements of which the appellant complains cannot be construed as antagonistic to the testimony of the appellant who stated, "At the time I remember hearing a shot, and hearing a thud. And I looked in my hand, and I had a gun." Furthermore, the testimony of the appellant sufficiently links him to the crime that he cannot be found to be prejudiced by the one statement of his codefendant tending to link the appellant to the shooting of Wolfe. Having failed to show that the statements were antagonistic, or that the appellant was prejudiced thereby, this assignment of error has no merit.

 In his third assignment of error, the appellant alleges that the trial court erred when it improperly admitted evidence of a burglary subsequent to the homicide, and failed to comply with the requirements of giving a *Burks* notice prior to trial. He contends that the subsequent burglary had no relevance to the issues presented at trial and that it created a subterfuge for the jury by depicting the appellant as one deserving of punishment. We are of the opinion that the evidence of which the appellant complains was clearly so connected with the principal offense that it was part of the entire transaction. *Bruner v. State*, 612 P.2d 1375, 1377 (Okl.Cr.1980). Testimony indicated that all other crimes subsequent to the offense charged, including the burglary, were directly linked to the chain of events surrounding the homicide. The events surrounding the crime were of such probative value that it would not have been possible to give the jury a complete understanding of the death of Thornton Wolfe without mentioning the burglary. Moreover, the admission of evidence of other crimes is a matter solely within the trial court's discretion and its probative value clearly outweighed any prejudice to the appellant. Under the circumstances of this case, and the events surrounding the death of the victim, the evidence of the burglary was properly admitted; and we find no merit to this assignment of error.

 In his fourth assignment of error the appellant contends that his sentence should be modified because the State failed to disclose the consideration given to Mike Mayfield in exchange for his testimony on behalf of the State. The appellant complains that Mayfield responded "no" to a question by the prosecutor concerning whether he had been offered any promises for his testimony, when on cross-examination by defense counsel, Mayfield admitted being released from jail after his bail had been reduced, but asserted that he had not been offered any kind of leniency, immunity, or promises in exchange for his testimony. Subsequent to the trial, Mayfield pled guilty to the charge of accessory to a felony, and received a one year deferred sentence. Appellant suggests that an "understanding" existed between Mayfield and the District Attorney's office and that the

prosecution should have disclosed the substance of that understanding after Mayfield denied that he had been offered anything in exchange for his testimony. The appellant has presented nothing but speculation that any plea bargaining occurred, or that Mayfield testified falsely. We therefore find this assignment of error to be without merit.

The appellant's fifth assignment of error urges that expert psychological testimony and corroborating evidence concerning the capacity of the appellant to form intent were improperly excluded. He argues that the jury was allowed to hear only pieces of evidence proferred to provide the basis for psychological testimony. Defense counsel stated in the record that he was not attempting to present an insanity defense, but that the testimony was being offered for the purpose of showing that the appellant was unable to form the requisite intent for conviction of Murder in the First Degree. An examination of the record reveals that the judge stated that he would allow counsel to present whatever evidence he needed to establish his defense. He sustained objections to questions which appeared to be leading to an insanity defense or which appeared to be otherwise improper. We find no error in the objections sustained by the trial court. Furthermore, we note that appellant's counsel succeeded in his defense because the appellant was convicted of the lesser offense of Manslaughter in the First Degree.

The appellant's next assignment of error claims that he was prejudiced by the trial court's refusal to give the Oklahoma Uniform Jury Instructions on voluntary intoxication. Instead, the judge gave an instruction on voluntary intoxication which he had formulated. The appellant argues that the court's instruction may have confused the jury and resulted in a compromise and the ninety-nine year sentence. Such an argument is sheer speculation, and certainly not substantial enough for this Court to modify the appellant's sentence. The jury was apparently convinced that the appellant was in such a state of intoxication that he could not have formed the requisite intent for Murder in the First Degree, and apparently correctly followed the trial court's instruction because of his conviction of the lesser offense. This assignment of error is without merit.

■ The appellant in his seventh assignment of error asserts that improper prosecutorial remarks during closing argument prejudiced him and caused the jury to assess an excessive sentence. Only two of those comments were properly preserved by timely objections, and so we shall address only those. *Thomson v. State*, 676 P.2d 857 (Okl.Cr.1984). In the first comment the prosecutor briefly discussed what the evidence had shown about the appellant's codefendant who had been released by the trial court on a demurrer to the evidence the previous day. Having examined the prosecutor's remarks, we fail to see how they prejudiced the appellant, and find none. In the second comment of which the appellant complains, the prosecutor criticized the appellant for his apparant lack of compassion and for his failure to show remorse for Mr. Wolfe's death. Appellant's counsel objected that he had tried to get in testimony about the appellant's feelings, but the prosecutor had objected, and the court had sustained the objection. The objection was a response to a question addressed to the appellant during direct examination. He was asked, "Allen, what are your thoughts about this homicide?" The prosecutor objected to the relevance of the question. Defense counsel did not reword the question or make an offer of proof to show that he was attempting to elicit the appellant's feelings. The word "thoughts" encompasses opinions, beliefs, and conjectures as well as feelings. The prosecutor's objection was properly sustained. Concerning the appellant's demeanor on the witness stand, where the comments of the prosecutor are conclusions based on the evidence, they are not improper. *Hair v. State*, 532 P.2d 72 (Okl. Cr.1974).

■ In his final assignment of error, the appellant contends that his punishment is excessive and that it should be modified. This Court has repeatedly stated that the

issue of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case. A sentence will only be modified when we can conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of the Court. *Edwards v. State*, 663 P.2d 1233 (Okl.Cr.1983). In light of the overwhelming evidence of the appellant's guilt and the brutal nature of the crime committed, we cannot say that the sentence imposed shocks the conscience of this Court.

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concurs.