Larry A. HORNER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-90-0052.

Court of Criminal Appeals of Oklahoma.

Aug. 4, 1992.

Rehearing Denied Sept. 29, 1992.

Donald A. Edwards, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Larry A. Horner, was tried by a jury for six (6) counts of the crime of Possession of a Stolen Vehicle, in violation of 21 O.S.1981, § 151, in Case No. CRF-88-77, in the District Court of Osage County. The jury returned verdicts of guilty and assessed punishment at two (2) years imprisonment and a one thousand (1,000) dollar fine on each count. The trial court sentenced the appellant accordingly. From this Judgment and Sentence, the appellant has perfected his appeal to this Court.

On May 6, 1988, four Tulsa police officers, two deputies from the Osage County Sheriff's Department, and a staff member from the Oklahoma Used Motor Vehicle & Parts Commission arrived at appellant's automobile salvage business. The group conducted a warrantless administrative investigation under the authority of 47 O.S.Supp.1988, § 591.6. Pursuant to this statute, the group investigated the business' records and a number of vehicles and automobile parts.

On May 13, 1988, several officers and deputies returned to the same premises to execute a search warrant which had been obtained based upon information gained during the initial inspection. Once again, several items including stolen vehicles and automobile parts were found.

Two days later, on May 15, 1988, two deputies of Osage County conducted a warrantless search of land upon which appellant had an oil production lease. This land was located approximately two miles from the salvage yard. This search revealed additional stolen vehicles which were subsequently seized.

In his first proposition of error, the appellant contends that the initial inspection was nothing more than an invalid search conducted in violation of his fourth amendment rights under the United States Constitution. He specifically claims that the statute which authorizes such administrative inspections, 47 O.S.Supp.1988, § 591.6, is unconstitutional. In support of this argument, appellant cites several Supreme Court cases which deal with varying aspects of fourth amendment protections against unreasonable searches and seizures: *Camera v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

In *Camera*, the United States Supreme Court found that an ordinance authorizing building inspectors to inspect a private residential area of an apartment building without a warrant was unconstitutional on its face. The Court in *See* then determined that the fourth amendment protections addressed in *Camera* applied to similar inspections of commercial structures not used as private residences. In *Marshall*, the Supreme Court upheld a District Court's ruling that the fourth amendment required a warrant for the search of a business premises' work area for safety hazards and regulatory violations.

Although the Supreme Court found in each of these cases that the warrantless administrative search was unconstitutional, the Court noted that there is a "carefully defined class of cases" wherein warrant-

less searches of private property will not be deemed unreasonable. *Camera,* 387 U.S. at 528–29, 87 S.Ct. at 1731. One such exception to the search warrant requirement was recognized in *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). In *Colonnade,* the Court found that a business licensed to deal in liquor could be fined for refusal to submit to an administrative search conducted without a warrant pursuant to liquor regulatory laws. In departing from the general rule set forth in *Camera* and *See,* the Court found it significant that the liquor industry has been "closely regulated" and "long subject to close supervision and inspection." *Colonnade,* 397 U.S. at 74, 77, 90 S.Ct. at 776, 777. The import of this was noted again in *Marshall* wherein the Supreme Court found that "[t]he element that distinguishes ... [closely regulated businesses] ... from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." *Marshall,* 436 U.S. at 313, 98 S.Ct. at 1821.

■ In a more recent case very factually similar to the one at bar, *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)[1], the Supreme Court further explained this exception to the search warrant requirement. The Court in *Burger* found that to be reasonable, warrantless inspections of pervasively regulated businesses must meet a three part test:

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made.

> .     .     .     .     .

> Second, the warrantless inspections must be "necessary to further [the] regulatory scheme."

> .     .     .     .     .

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.' In addition, in defining how a statute limits the discretion of the inspectors, ... it must be 'carefully limited in time, place, and scope' (citations omitted).

*Burger,* 482 U.S. at 702–03, 107 S.Ct. at 2644.

■ In order to apply the *Burger* test to the present case, we must first determine whether the appellant was engaged in a closely regulated business. The Oklahoma Automotive Dismantlers and Parts Recycler Act, 47 O.S.1981, § 591.1 et seq., requires that automotive dismantlers obtain a license and pay a fee for such license. They must also keep a register of all purchases and sales. These records must be made available for inspection. Further, there is a criminal penalty for failure to comply with these requirements. Because the requirements to which the automotive dismantlers are subject in Oklahoma are equally intrusive as those noted by the Supreme Court in *Burger,* 482 U.S. at 704–05, 107 S.Ct. at 2644–45, we find that the nature of Oklahoma's regulatory statute indicates that the operation of an auto salvage yard is a "closely regulated" business in Oklahoma.

---

**1.** Under the authority of a New York State statute, five officers of the New York City Police Department, entered the defendant's junkyard, wherein he was in the business of dismantling automobiles and selling their parts, to conduct an inspection. Pursuant to their inspection, the officers found several vehicles and parts of vehicles in the junkyard which were stolen. The defendant was arrested and charged with five counts of possession of stolen property and one count of unregistered operation as a vehicle dismantler.

We must now determine whether the Oklahoma regulatory scheme satisfies the three criteria necessary to make warrantless inspections reasonable. First, because automobile theft is indisputably a significant social problem in Oklahoma, we find that the State has a substantial interest in regulating the vehicle-dismantling and automobile salvage yard industry. Thus, the first prong of the *Burger* test is met here.

The second prong, as we have already noted, requires that the warrantless inspection be necessary to further the regulatory scheme. As in *Burger*, we find that it is rational for the State to believe that regulations aimed at preventing automobile junkyards from becoming markets for stolen vehicles will logically help reduce auto theft. *Id.*, 482 U.S. at 709, 107 S.Ct. at 2647. It is also rational to find that in order for such regulations to be effective, warrantless inspections are necessary.

Finally, we must determine whether Oklahoma's statutory scheme provides in terms of certainty and regularity of its application, a constitutionally adequate substitute for a warrant as is required by *Burger*. Title 47 O.S.Supp.1988, § 591.6 informs the owner of commercial premises that the inspection is being made pursuant to statutory authority and is limited in scope and place to motor vehicles or their parts which are owned by or stored at the owner's place of business. The register of purchases and sales, which is to be kept at the owner's place of business, must also be made available for inspection. Further, the time of the inspection is limited to "reasonable hours on business days." Thus, we find that the requirements of *Burger* are met by Oklahoma's Automotive Dismantler's and Parts Recycler Act.

Because we have found that the auto salvage business is a "closely regulated" business in Oklahoma, and that Oklahoma's regulatory scheme meets the federal constitutional standards set forth in *Burger*, we also find that appellant's first assignment of error should be denied.

In his second assignment of error, appellant argues that because the initial adminis-trative inspection was unlawful, the search warrant based upon tainted evidence found during the unconstitutional inspection was also unlawful. Therefore, he claims that evidence found during the execution of the search warrant on May 13, 1988, should also have been excluded at trial. Because we have found the initial inspection to have been lawful, this argument is without merit.

In his third assignment of error, the appellant complains that the warrantless search of the oil production property was unlawful and thus, the evidence gained pursuant to that search should not have been admitted at trial. This Court has held that when a search takes place outside the curtilage area, the open fields doctrine applies, and no search warrant is required for entry. *Luman v. State*, 629 P.2d 1275, 1276 (Okl.Cr.1981). The record reveals that the property searched was basically an open field located approximately two miles away from the salvage yard. Thus, we find that the area searched was not within the curtilage area. Although the officers gained access to the property by climbing over a gate, we do not find that this changed the nature of the property searched. This assignment of error is without merit.

Finally, appellant argues that several State's witnesses made "numerous allusions to other alleged acts of criminal nature, not the subject of any Count in the Information...." Appellant has not only failed to cite specific improper comments by making specific reference to the transcript, but he has also failed to cite any authority, relevant or otherwise, in support of his position. In the absence of fundamental error, this Court will not address issues not supported by citation to relevant authority. *Wilson v. State*, 737 P.2d 1197, 1203 (Okl.Cr.1987). Finding no fundamental error, this assignment of error is waived.

In light of the above, appellant's judgment and sentence should be, and hereby is, AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and PARKS, J., concur.

JOHNSON, J., concurs in part/dissents in part.

JOHNSON, Judge, concurring in part/dissenting in part.

I concur with the majority regarding appellant's third and fourth proposition. I dissent though to the search based upon an administrative inspection statute that should not be used as a guise to hide a search for criminal violations. Based upon this, I distinguish *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

It is my interpretation in *Burger* that the inspection of the junkyard was, in reality, a random search. In this case, it is clear from the record that the search was a charade to use the administrative procedure to get around the fourth amendment and Article 2, Section 30, of the Oklahoma Constitution.

There were four Tulsa police officers and two Osage County deputies that made the initial search, together with the party from the Used Motor Vehicle Commission. The officer testified that the investigation was based upon a criminal investigation in Tulsa County, further that they were going to the salvage yard to search for stolen vehicles and "had information that those things might be there."

I do not find that 47 O.S.Supp.1986, § 591.6, is unconstitutional but I find that the Tulsa police officers did not act in good-faith and in reliance upon this statute. It would have been so easy in this case to obtain a search warrant pursuant to the Oklahoma Constitution as well as the fourth amendment. A warrantless "administrative" search used as a subterfuge to search for evidence of a crime to me would be an unconstitutional application of the administrative statute. Therefore, I would hold that if the purpose of the inspection is to be used to uncover evidence of a crime for criminal prosecution, traditional probable cause and warrant requirements apply, but to the contrary, as in *Burger,* a random administrative search is valid.